# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

A statute, which should attempt to make it a criminal offense for any woman under the age of twenty-one years to enter a hotel or restaurant conducted by Chinese, or to be served with food or drink therein, or for the proprietor of any such hotel or restaurant to admit thereto a woman under the age of twenty-one years or to serve her with food or drink therein, would be in violation of the Fourteenth Article of the Amendments of the Constitution of the United States in denying to persons of the Chinese race "the equal protection of the laws."

A statute, which should attempt to make it a criminal offense for any woman under the age of twenty-one years to enter a hotel or restaurant conducted by Chinese, or to be served with food or drink therein, or for the proprietor of any such hotel or restaurant to admit thereto a woman under the age of twenty-one years or to serve her with food or drink therein, would not be a proper exercise of the police power.

THE following order was passed by the House of Representatives on March 10, 1911, and on March 14, 1911, was transmitted to the Justices of the Supreme Judicial Court. On March 22, 1911, the Justices returned the answer which is subjoined.

ORDERED, That the Justices of the Supreme Judicial Court be requested to give to the House of Representatives their opinion upon the following question :

If the Legislature is of the opinion that public order, decency and morality require that girls and young women be excluded from Chinese restaurants and hotels, is it within the constitutional power of the Legislature to enact a law making it a criminal offense for any woman under the age of twenty-one years to enter a hotel or restaurant conducted by Chinese, or to be served with food or drink therein, or for the proprietor of any such hotel or restaurant to admit thereto a woman under the age of twenty-one years or to serve her with food or drink therein ?

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The accompanying question, upon which our opinion is required, we respectfully answer as follows:

The Fourteenth Article of the Amendments of the Constitution of the United States contains this provision: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." This language has received judicial interpretation by the Supreme Court of the United States, whose decisions upon questions arising under the federal Constitution are binding upon us. Said Mr. Justice Harlan, in *Powell* v. *Pennsylvania*, 127 U. S. 678, 684, "The main proposition advanced by the defendant is that his enjoyment upon terms of equality with all others in similar circumstances of the privilege of pursuing an ordinary calling or trade, and of acquiring, holding, and selling property, is an essential part of his rights of liberty and property, as guaranteed by the Fourteenth Amendment. The court assents to this general proposition as embodying a sound principle of constitutional law." In *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369, Mr. Justice Matthews, in giving the unanimous opinion of the court, used this language: "These provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws. It is accordingly enacted by § 1977 of the Revised Statutes, that 'all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.'" The case had reference to regulations whose enforcement affected peculiarly subjects of the Emperor of China, and the opinion refers to the

treaty of November 17, 1880, between this government and China, found in 22 U. S. Sts. at Large, 826 at page 827.

Mr. Justice Field, in *Barbier* v. *Connolly*, 113 U. S. 27, 31, gives us this language in the opinion of the court : "The Fourteenth Amendment, in declaring that no State 'shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses. But neither the amendment — broad and comprehensive as it is — nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity." See also *In re Tiburcio Parrott*, 1 Fed. Rep. 481 ; *In re Lee Sing*, 43 Fed. Rep. 359.

The business of keeping a hotel or restaurant, to which the proposed legislation relates, is a necessary and proper kind of business that is entitled to the protection of the laws. It may be conducted legally or illegally, by a person of any nationality. The proposed law, without reference to the way in which it is conducted, puts a restraint upon it which might be expected very seriously to interfere with the successful management of it, whenever it is carried on by a person of a particular nationality,

which is not put upon it when it is carried on by a person of any other race and nationality. By the strict terms of the proposed law it would be a criminal offense for a Chinese proprietor of a hotel or restaurant to permit his wife, if she was under the age of twenty-one years, or his grown up daughter of less than that age, to enter his hotel or restaurant, or to be served with food or drink therein. This is a very great interference with the liberty of the subjects of a foreign ruler, lawfully residing within the jurisdiction of this State. It is a harmful discrimination against persons of the proscribed class, founded wholly upon their race and nationality, and it plainly falls within the constitutional prohibition quoted above. It subjects Chinese to an oppressive burden that deprives them of liberty which all others enjoy, and interferes with their right to carry on business, acquire property and earn a livelihood, and denies them the protection of equal laws.

The only question that can be regarded as doubtful by anybody is that which arises on the supposition that the Legislature may be " of the opinion that public order, decency and morality require that girls and young women be excluded from Chinese restaurants and hotels." This brings us to the consideration of the police power. There is no doubt of the right and duty of the Legislature to enact laws for the promotion of public order, decency and morality. But when such legislation interferes with the exercise of personal rights, it must be directed to the prevention of real evils, in the interest of morality. This proposed legislation does not assume to forbid anything that is necessarily evil in itself, or to deal directly with any offense against order, decency or morality. There are good hotels and bad hotels, good restaurants and bad restaurants, kept by men of the Caucasian race; and there are others of both kinds kept by men of other races. This legislation does not refer to the character or condition of the hotel or restaurant that a young woman may not enter, but refers only to the nationality of the person who conducts it. The enactment of such legislation is not a proper exercise of the police power. It has no direct relation to the evil to be remedied. It forbids the entry of a young woman into the hotel or restaurant of a Chinese proprietor, even if it is a model of orderly and moral management, and it permits the entry of

young women into a hotel or restaurant kept by an American, when it is known to be maintained in part for the promotion of immoral or criminal practices. The classification of hotels and restaurants into those that are open to young women and those that are closed to young women is not founded upon a difference that has any just or proper relation to the professed purpose of the classification. The only classification is into hotels and restaurants kept by Chinese and those kept by persons of any other nationality.

In reference to classifications made in an attempted exercise of the police power, Mr. Justice Brewer said, in *Gulf, Colorado & Santa Fé Railway* v. *Ellis*, 165 U. S. 150, 165, " It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground — some difference which bears a just and proper relation to the attempted classification — and is not a mere arbitrary selection." See also opinion by Mr. Justice Field in *Ah Kow* v. *Manan*, 5 Sawyer, 552.

The fact that a man is white, or black, or yellow is not a just and constitutional ground for making certain conduct a crime in him, when it is treated as permissible and innocent in a person of a different color.

We answer the question in the negative.

<div style="text-align:right">

MARCUS P. KNOWLTON.
JAMES M. MORTON.
JOHN W. HAMMOND.
WILLIAM CALEB LORING.
HENRY K. BRALEY.
HENRY N. SHELDON.
ARTHUR PRENTICE RUGG.