THE STATE EX REL. PAUL WELLS V. ALLEN W. WALKER, Judge of Circuit Court.—34 S. W. (2d) 124.

Court en Banc, December 31, 1930.

*Daniel C. Rogers* for relator.

*Stratton Shartel,* Attorney-General, *A. B. Lovan,* Assistant Attorney-General, and *Edward C. Lynch,* Prosecuting Attorney, for respondent.

WHITE, J.—June 17, 1930, relator presented his petition in this court alleging that he is a minor, fourteen years of age, charged with the crime of burglary in the Circuit Court of Howard County, and that the respondent, A. W. Walker, Judge of the Circuit Court of the Ninth Judicial Circuit, which includes that county, had entered an order to the effect that the relator was not a proper person to be dealt with under the Juvenile Law and granting the State leave to prosecute him under the general law. The petition then alleges that the respondent is without jurisdiction to proceed against the relator, hence the relator prays this court for a writ prohibiting the respondent from proceeding with the trial. In return to the provisional rule issued upon that petition the respondent admits that information was filed in the Circuit Court of Howard County charging the relator with the crime of burglary and that respondent, as judge of the circuit court in that county, made the following order:

"It appearing to the court that he (meaning relator, Paul Wells) is not a proper person to be dealt with under the Juvenile law, State is given leave to prosecute under the general law."

The relator August 23, 1930, filed his motion for judgment upon the pleadings. The case then turns for determination upon the facts stated in the respondent's return.

I. The respondent asserts his right to proceed in the manner contemplated in the order objected to under the statute vesting the circuit courts in counties of less than fifty thousand inhabitants, with jurisdiction of Juvenile Delinquents, Section 1136, Revised Statutes 1919 (Laws 1927, pp. 131-132), as follows:

"Sec. 1136. The Cape Girardeau court of common pleas and *all circuit courts in counties less than 50,000 population shall have original jurisdiction of all cases coming within the terms of this article.* The proceedings of the court in such cases shall be entered in a book or books kept for that purpose, and known as the juvenile records, *and the court shall be known as the Cape Girardeau court of common pleas and the circuit court, and may for convenience be called the juvenile court.* The clerk of the Cape Girardeau court of common pleas and the clerk of the circuit court in such counties, shall act as the clerk of the juvenile court. In cases of the absence or inability of the circuit judge to hold said court, he may call in any other circuit judge to perform that duty. In cases arising

under this article, the hearing shall be before the court without a jury, and the practice and procedure customary in proceedings in equity shall govern: Provided, that the child shall be given a trial by jury, as now provided in the juvenile court act pertaining to counties of over 50,000 inhabitants, when demanded by the child, its parents or guardian. *In the discretion of the judge of the Cape Girardeau court of common pleas and of the circuit court any petition alleging a child to be delinquent may be dismissed and such child prosecuted under the general law when, in the judgment of such judge, such child is not a proper subject to be dealt with under the reformatory provisions of this article.*"

We put in italics the significant parts. Also an Act of 1927 (Laws 1927, p. 129) as follows:

"Section 1. Child may be prosecuted under general law.—In the discretion of the judge of any court having jurisdiction of delinquent children under the provisions of article 5, chapter 11, Revised Statutes of Missouri, 1919, or under the provisions of article 6, chapter 21, Revised Statutes of Missouri, 1919, any petition alleging a child to be delinquent may be dismissed and such child prosecuted under the general law, and any motion, petition or application, made to any court or judge having general jurisdiction of criminal causes, to transfer the case of or charge against any delinquent child to a court having jurisdiction of delinquent children under the provisions of said articles 5 and 6, may be denied in the discretion of the judge, when in the judgment of the judge such child is not a proper subject to be dealt with under the reformatory provisions of either said article 5 or said article 6."

These two acts passed at the same session, 1927, the first relating to counties of less than 50,000 and the second applying to proceedings in all counties, express the general purpose of the General Assembly. Section 1136, a part of the Act of 1917, vesting the circuit courts in counties of under fifty thousand population with jurisdiction of juvenile cases, was repealed and reenacted by the Act of 1927 (Laws 1927, p. 131), with a provision including the Cape Girardeau Court of Common Pleas and one other significant change; otherwise, it remains substantially the same as it appeared in the Act of 1917.

The provisions of Section 1136, as amended, giving the circuit court jurisdiction and vesting the circuit court with discretion to try one under the age of seventeen under the general law is unequivocal, precise and vests the circuit court involved here with the jurisdiction claimed, unless there are other provisions of the statute which require a contrary conclusion.

II. The relator bases his claim upon the ruling in State ex rel. v. Rutledge, 321 Mo. 1090, 13 S. W. (2d) 1061. That case arose

under Article VI, Chapter 21, Revised Statutes 1919, relating to the treatment of delinquent children in counties of fifty thousand inhabitants and over. In that article there is no provision similar to those in Section 1136, relating to counties of less than fifty thousand. The holding in the Rutledge case was that if one charged with a crime was "brought into court" when under seventeen years of age, a juvenile court only had jurisdiction of his case and could try it under the provisions of the law relating to juvenile delinquents, or had jurisdiction to try such person as for a crime under the general law. It was held further that Section 1 of the Act of 1927 (pp. 129-130) quoted last above, could apply to cases where one charged with the commission of a crime while under the age of seventeen years "was brought before the court" after he had reached the age of seventeen years, that a court of general criminal jurisdiction would have discretion to entertain a prosecution under the general law. The opinion quotes from Sections 2592, 2591 and 2598 of Article VI, Chapter 21, relating to juvenile courts in counties of fifty thousand or over. [321 Mo. l. c. 1097, 13 S. W. (2d) l. c. 1064.]

The passages quoted were reinforced by the conclusion of Section 12426, Revised Statutes 1919, as follows:

"All commitments of boys under the age of seventeen to the Missouri reformatory, the Missouri training school or the penitentiary shall be made by the juvenile division of the circuit court."

The ruling was an attempt to reconcile the Act of 1927 (pp. 129-130) with the sections referred to.

It is suggested by the State that this does not apply where the prosecution begins before the person charged reaches the age of seventeen years, because the defendant there was over that age; the holding is therefore *obiter*. While the prosecution affected a person after he reached the age of seventeen years, still the consideration of the statute as applied to the juvenile law under consideration and the elucidation of the subject naturally brought into the case a construction of the statute as applied to prosecutions begun both before and after the delinquent charge arrived at the age of seventeen years.

It may not be amiss to point out that the vesting of discretion in a juvenile court to try a delinquent child under the general criminal law is nowhere specifically stated in the sections quoted in the Rutledge case. It can only arise by implication. The part quoted from Section 2592 provides only that "the practice and procedure precribed by law for the conduct of criminal cases shall govern in all proceedings under this article. . . ." That applies to the trial of one as a delinquent and has nothing whatever to do with determining the *forum* in which a delinquent may be tried for a crime.

The punishment mentioned in the part quoted from Section 2591 means "punishments" inflicted upon a delinquent minor, confinement in the reformatory and similar disposition. This is evident from Section 2607 which provides that the court shall not lose jurisdiction of delinquent minors. The reference to imprisonment in the penitentiary and death penalty *"when committed by a person over the age of eighteen years"* is only for the purpose of defining the character of the crime for which the delinquent stands charged. It has nothing to do with whether the child shall be tried as a delinquent or under the criminal law.

The part quoted from Section 2598 expressly limits its application to "delinquent children." It does not include one convicted under the general criminal law. There is nothing in any or all of those three quotations taken by themselves to compel the implication. They must be reenforced by Section 12426 to justify it. Further, nothing similar to the quotations from Sections 2592, 2591 and 2598, relating to procedure in juvenile cases in counties of fifty thousand and over are found in the Act of 1917 relating to the treatment of juvenile delinquents in counties of less than fifty thousand, nor in any amendment to that act, as those amendments appear in Article V, Chapter XI, Revised Statutes 1919, and subsequent session acts. On the contrary, Section 1136, Revised Statutes 1919 (Laws 1927, p. 131), provides specifically:

"The Cape Girardeau court of common pleas and all *circuit courts* in counties less than 50,000 population shall have *original jurisdiction* of all cases coming within the terms of this article (Art. V, Ch. 11). . . . In the discretion of the judge of the Cape Girardeau court of common pleas and of the *circuit court* any petition alleging a child to be delinquent may be dismissed and such child prosecuted under the general law when, in the judgment of such judge, such child is not a proper subject to be dealt with under the reformatory provisions of this article."

It is well to note here the significant change in Section 1136 as reenacted in 1927. Originally it read: "The court shall be known as the juvenile division of the circuit court and may for convenience be called the juvenile court." As reenacted in 1927 the passage reads: "The court shall be known as the Cape Girardeau court of common pleas and the circuit court and may for convenience be called the juvenile court." The section as reenacted also leaves out a provision about appointing a referee.

The change is significant because it brings the section into harmony with the remainder of Article V, Chapter 11. There are no separate juvenile courts, nor juvenile divisions of the circuit courts, in counties of less than fifty thousand.

Section 1141, Revised Statutes 1919, which is Section 7 of the Act of 1917, provides (We emphaize some significant expressions):

"*Children under seventeen—jurisdiction.*—When in any such county a child *under* the age of seventeen years *is arrested* with or without warrant, such child shall, instead of being taken for trial before a justice of the peace, or a police magistrate, or judge of any other court now or hereafter having jurisdiction of the offense charged, be taken *direct before* the *circuit court;* or if the child shall have been taken before a justice of the peace or a police magistrate or judge of such other court, it shall be the duty of said justice or police magistrate or judge to transfer the case *to the circuit court,* and of the officer having the child in charge to take such child before said court, and *the said court shall proceed to hear the case.* Nothing in this article contained shall be construed as depriving any court or magistrate of such counties of the powers now given them by the law. to file complaints and issue warrants, but all subsequent proceedings shall be had *in the circuit court.* The *circuit court* shall proceed to hear and dispose of such cases in the same manner as if the proceedings had been instituted in said circuit court upon petition as hereinbefore provided."

"The petition hereinbefore provided" refers of course to the petition mentioned in Sections 2 and 4 of the Act of 1917, now Sections 1136 and 1138, Revised Statutes 1919.

Under the ruling in the Rutledge case there seems to be no diference between the right of the State to prosecute under the general law one charged with the commission of a crime while under the age of seventeen years whether the prosecution began before or after he reaches seventeen. It is only a question of the *forum.* If the proceeding is begun when the accused is still under the age of seventeen years the juvenile court alone is held to have jurisdiction, whereas if the proceeding were commenced after the person charged had reached the age of seventeen years the court of general criminal jurisdiction could exercise its discretion as to whether it would proceed under the general law or transfer to the juvenile court.

Nothing could be more direct and specific than the provisions of Section 1136 as amended by the Act of 1927 (pp. 131, 132): "All circuit courts . . . shall have original jurisdiction of all cases coming within the terms of this article." The proceedings in such cases shall be entered in a book or books, kept for the purpose and to be "known as the juvenile records and *the court shall be known as the Cape Girardeau court of common pleas and the circuit court and may for convenience be called the juvenile court.*" That does not mean a separate court. It merely means that "for convenience" separate records of the different methods shall be kept, but it is the circuit court in its capacity as such while entertaining juvenile cases, and "for convenience" is called the juvenile court. Then the section closes with this: "In the discretion of the judge of the circuit court *any* petition alleging a

child to be delinquent may be dismissed and such child prosecuted under the general law." Section 1141, Revised Statutes 1919, provides that when such a child *under the age of seventeen is arrested* with or without a warrant, instead of being taken for trial before a justice of the peace, etc., shall *"be taken direct before the circuit court,"* or if taken before a justice of the peace, etc., it shall be transferred to the circuit court, "and the said court shall proceed to hear the case." Then the section closes with this:

"Nothing in this article contained shall be construed as depriving any court of any such powers now given them by the law to file complaints and issue warrants, but *all subsequent proceedings shall be had in the circuit court.*

"The circuit court shall proceed to hear and dispose of such cases in the same manner as if the proceeding had been instituted *in said circuit court* upon a petition as hereinbefore provided."

Section 1144 provides that a *circuit judge* shall appoint an officer of the county or some other person to serve as a probation officer under the direction of the court (the circuit court) in cases arising under this article.

Section 1151 directs that "the court" shall devise and publish rules to regulate the procedure of cases coming within the provision of the article; and finally, Section 1152, provides that the article shall be liberally construed; that all children *"subject to the court's jurisdiction"* shall be given proper oversight and control, meaning, of course, the circuit court's jurisdiction.

III. In this case no petition alleging the relator to be a delinquent child, to be tried as such, was filed in the circuit court; so it was not necessary for the judge to exercise the discretion mentioned in the closing part of Section 1136, but the accused was taken directly to the circuit court as provided in Section 1141.

That part of Section 1136, while authorizing the court to dismiss a petition alleging the child to be delinquent and entertain a prosecution under the general law, necessarily implies that if the proceeding is begun under the general law the court has authority to proceed with the case under that law.

In order to set at rest any dispute as to the jurisdiction of the circuit court to entertain a proceeding under the general law where a child is charged while under seventeen years of age with the commission of a crime, the other Act of 1927 (p. 129) covers any case that might be in doubt, but providing that *any* petition or application made to *any* court or judge having *general jurisdiction of criminal cases may deny* any motion, petition or application to transfer the case to a court having jurisdiction of delinquent children.

An earlier act could not nullify that provision. All these provisions taken together contemplate that an information like that under consideration here must first be *filed* in the circuit court, and if the person affected desires to have the case conducted under the provisions of the juvenile law he must file some motion or petition to transfer the case from the circuit court to the juvenile court, so called for "convenience," which would merely mean that the defendant must ask the court to conduct the case as provided for a juvenile delinquent and not prosecute him under the general law. The record shows no motion or suggestion to the trial court that the proceeding be so transferred. The court could not then be without jurisdiction to proceed in the case when no proper method has been attempted by relator to have the proceeding transferred. He has no right to have the proceeding dismissed because he is properly and lawfully in court upon the charge under the authority of the provisions quoted. It is the circuit judge who sits and tries the case whether it is tried under the general law or under the juvenile law. As judge of the circuit court he must determine whether the relator may be prosecuted under the general law. The distinctions which are made are not in the different courts which may have jurisdiction of one prosecuted as a delinquent or as a criminal but in the application of a *law in the same court.* We could not make the preliminary rule absolute and thus compel the judge to dismiss the case. We could only order him to stop the proceeding under the criminal law.

The prohibition order which he asks of this court, however, would free him altogether, and that is the result he seeks. He hopes to get lost from view in a confusing technical tangle of his own contriving. On his theory the court could do nothing but release him.

The opinion in the Rutledge case mentions the time when one is "brought into court" as determining whether the juvenile court has exclusive jurisdiction. That could not apply to proceedings in counties of less than fifty thousand. It would lead to this result: if two warrants may be issued at the same time for two boys charged with committing the same crime while under seventeen years of age and if one is arrested and brought into court the day before he is seventeen, the other the day after he is seventeen, the same judge could not entertain both cases, in the same capacity. In one case the judge sitting as juvenile judge has jurisdiction. In the other, as judge of the criminal court he may have jurisdiction to deal with the accused as a criminal.

Section 1141, Revised Statutes 1919 (Section 7 of the Act of 1917), provides that when any such "child *under* the age of seventeen years is *arrested* with or without warrant, such child shall . . . be taken direct before the circuit court: . . . all subsequent pro-

ceedings shall be had in the *circuit court*. The circuit court shall proceed to hear and dispose of such cases," etc.

The law does not contemplate such a distinction. If he is correct then the language of Section 1141 means nothing.

IV. The implication mentioned above in Paragraph II, discovered in Sections 2592, 2591, and 2598, could not arise but for the concluding sentence of Section 12426, which might be applied to counties of less than fifty thousand as well as to those of that population and over, as follows:

"All commitments of boys under the age of seventeen to the Missouri reformatory, the Missouri training school or the penitentiary shall be made by the juvenile division of the circuit court."

This provision, appearing for the first time in the Act of 1919, is in direct conflict with the closing sentence of Section 1136 as amended in 1927, and also with the Act of 1927 (pp. 129, 130).

It was properly said in the Rutledge case that repeals by implication are not favored; that principle was applied to the Act of 1927 vesting jurisdiction in the circuit court to determine whether a delinquent should be tried as a criminal. But Section 1136 was in force when the Act of 1919, including the closing provision of Section 12426, was passed. By a similar course of reasoning that provision could not by implication repeal Section 1136 affecting counties of less than fifty thousand. However, repeals by implication occur when there is a total repugnance between the later and the earlier statute. Section 1136 was reenacted in 1927 (Laws 1927, p. 131). In order to leave no doubt of the legislative intention, at the same session the other Act of 1927 (pp. 129-130), more comprehensive and more specific, was passed. These two acts, at the same session, without exception or qualification, show conclusively what was in the legislative mind. The total repugnance should be conclusive to repeal the objectionable sentence in Section 12426.

To say that such part of Section 12426 may be harmonized with Section 1136, is to give effect to part of the latter section and nullify a part equally significant, or more so, and erase positive terms in the latter. The law does not contemplate such an effect by a prior statute upon a later one.

V. But there are other reasons more potent why the closing sentence of Section 12426 is not in force. It appears first in the Act of 1919, and then appears in Chapter 111, Revised Statutes 1919, entitled *"State Board of Charities and Corrections.—Institutions,"* and in Article XVI of that chapter entitled "State Prison Board." No one would suspect from such headings that courts and court procedure were provided for. The history of the subject and of that section in particular, Section 22 in the Act of 1919 (Laws 1919, p. 191), which runs through many amendments, shows consideration only

of reformatories and penal institutions. The section without that objectionable provision appeared first as a new section, 5741 in the Revised Statutes of 1889. Then in the Acts of 1897, p. 123; as Section 7759, in Revised Statutes 1899; in Acts 1909, p. 598; as Section 1529, Article XV, Chapter 10, Revised Statutes 1909; in the Acts of 1915, pp. 209-16; in the Acts of 1917, section 22, p. 163. In all those acts and revisions it is substantially the same, with no hint of courts, court procedure, until that foreign element was lugged in, in the Act of 1919.

In some of those acts the section was amended and in some repealed and reenacted. In the Revision of 1889 the section appears in the chapter entitled *"Institutions—Eleemosynary;"* in Article V *"Reform School for Boys;"* the same in the Act of 1897 and in Revised Statutes 1909; in the Act of 1909 and in Revised Statutes 1909, *Missouri Training School for Boys;* in Act of 1917, subject is *"Charities and Corrections; Missouri Training School for Boys; Industrial Home for Girls; Industrial Home for Negro Girls."* In the Act of 1919 *"Charities and Corrections; Missouri Reformatory, or Missouri Training School for Boys."*

While the form of the section changed from time to time, revision to revision, enactment to reenactment, all of them are practically the same before the Act of 1919. In none of the titles to any of the acts where the section appears, is there any hint or suggestion of court procedure, courts or trials. *They began long before the enactment of the law establishing the juvenile courts.* It is plain that in the legislative mind juvenile courts and reformatories were two separate and distinct subjects, for through all the legislation concerning them they were treated under separate heads. The jurisdiction of courts and trial for crime of minors under certain age as one, and reformatory methods as another. They are so treated in the Acts of 1917, where the juvenile trials in counties of less than fifty thousand inhabitants were first provided for and *charities and corrections* elaborately treated of.

The subject in the Act of 1917, now Article V, Chapter 11, is treated as coming under the head of courts, and, as noted above, vests the circuit court with jurisdiction to try juvenile cases as a separate and distinct function from the ordinary functions of the circuit court. Article VI of Chapter 21, relating to counties of fifty thousand and over was enacted in 1911 (Laws 1911, p. 177), by an act which is headed "Juvenile Courts" and the title to the act mentions only court, neglected and delinquent children and the establishment of juvenile courts.

The Charities and Corrections Act of 1917 is very comprehensive in covering everything embraced within that subject. It is in lieu of or reenacts all general laws relating to that general subject. If Juvenile Courts had been pertinent to the general subject under con-

sideration it would have included the subject-matter of the Act of 1911 relating to juvenile courts in counties of fifty thousand or over.

The Legislature at the same session enacted the two statutes under which respondent is proceeding, under a different head, as if treating of a different subject. Thus two subjects were introduced into the Act of 1919 (p. 191), where the provision now in Section 12426, Revised Statutes 1919, first appeared, contrary to Section 28, Article IV, of the Constitution.

VI. The title to the Act of 1919 (p. 191) merely says it repeals four sections of the Act of 1917 and enacts four other sections in lieu of them by the same numbers; they include Section 22. The first comprehensive title appears in the Act of 1917 (Laws 1917, p. 155), which repeals several sections of the Act of 1915, and enacts a number of sections in lieu of them, including Section 22 (p. 163), which substantially is now Section 12426, Revised Statutes 1919, without the provision now concluding that section. The title is as follows:

"AN ACT to create and establish *a state prison board,* and constituting the same a corporation; prescribing the powers and duties of said board and of the members of said board and salaries of same; providing for appointment and removal of same; providing for lease, purchase, improvements and condemnation of land and appropriation therefor; providing for the *control and regulation of the Missouri State penitentiary,* the *Missouri reformatory,* the *industrial home for girls,* the *industrial home for negro girls and all other penal and reformatory institutions now or hereafter organized;* providing for *employing inmates* of same at old and new industries for *producing articles* for *certain public institutions,* properties, *highways and rural post roads, for the state, political subdivisions* thereof, and for farmers and agricultural purposes, and *for health and welfare of prisoners;* and for the sale of the excess of products; for leasing or otherwise providing plants for such industries; providing for employing the inmates on certain public properties and public highways and said roads; for *prohibiting the contracting of convict labor,* with exceptions, with penalties for violating this act; for transferring to said *board and members thereof* all powers and duties *heretofore imposed* by statute on any of said *penal or reformatory institutions or commissions, boards* or *other officers* heretofore managing or controlling any of said institutions, or by the board of pardons and paroles, not inconsistent with the provisions of this act; providing for continuing the 'revolving fund' for use of said industries, and appropriation for said fund; *for repealing substantially all laws relating to said institutions or matters referring to same,* and *for re-enacting substantially all laws relating to said institutions and matters relating to same,* and fixing salaries of cer-

tain officers and employees not inconsistent with the provisions of this act, such new laws having new numbers; for transferring books, maps, etc., to the state prison board; for repealing all laws in conflict or inconsistent with this act."

There is no hint in that title of courts, trials or procedure. No member of the General Assembly voting for that act or the amendatory Act of 1919, would be able to tell from the title that the act would deal with juvenile courts or court procedure *which were treated at the same session in other acts.* Nor could such things be discovered from the subject-matter treated in any of the amended acts. On the contrary, the legislative interpretation appears in Section 1 of the Act of 1917, as follows:

"*Section 1. Title of Act.* This act shall be known as the '*State prison board act*' and shall apply to all state penal institutions now or hereafter organized and the state prison board herein created."

That long and labored title includes every detail which the lawmakers had in mind. If there was an intention to include any other specific items they would have been mentioned. The failure to mention juvenile courts excluded them from the notice of the lawmakers. No general terms in that title could comprehend juvenile courts. Those most general mention "*duties heretofore imposed by statute on any penal or reformatory institutions, etc. . . . repealing substantially all laws relating to said institutions or matters referring to same and for re-enacting substantially all laws relating to said institutions and matters relating to same.*" All those institutions "heretofore" existing came into being and all laws relating to them and all "matters relating to the same" *were enacted before any statute was passed creating a juvenile court.* ·

Since the title to the Act of 1919 says only that it repeals four sections of the Act of 1917, entitled "Charities and Corrections" and enacts four sections in lieu thereof, the members would be in duty-bound to refer to the title of the Act of 1917 for the subject-matter considered.

"While a title which declares that the act is one to amend or supplement an earlier act is sufficient for the purpose indicated, it does not indicate a purpose to enact provisions that are not germane to the subject expressed in the *title* of the original act." [25 R. C. L. 870.]

"An act to amend a section of a previous act which contains subjects not expressed in the *title* of either the *amending* act or the original act is unconstitutional." [25 R. C. L. 871.]

Thus the provision is unconstitutional because not mentioned nor suggested in the title to the amendatory Act of 1919, and not "clearly expressed" nor mentioned at all in the title of the act amended. If the two features treated of in an act were so related

as to come under one general head, still the title of the act would have to be so specific as to include both unless its general terms necessarily included both.

"If the title is narrow and restricted, carving out for treatment only a part of a general subject, the legislation under it must be confined within the same limits, even though the Legislature might, with propriety, have selected a more comprehensive title which would have embraced the entire subject of legislation." [25 R. C. L. 862.]

"The title must express the subject of the act in such terms that members of the general assembly and the people may not be left in doubt as to what matter is treated of." [State v. Burgdoerfer, 107 Mo. l. c. 30.]

Section 28, Article IV, of the Constitution is not violated, "so long as the generality of the title . . . is not misleading or deceptive, but fairly expresses the general subject or object of the law; the mere generality of the title is not an objection." [25 R. C. L. 853.]

Some of the adjudications in this State are very apt on this subject.

The purpose of Section 28, Article IV, of the Constitution, said this Court in St. Louis v. Wortman, 213 Mo. l. c. 140, quoting from Judge Cooley on "Constitutional Limitations," is

"To prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles give no intimation, . . . and to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation."

See also State v. Parker Distilling Co., 237 Mo. 103.

In State ex rel. School District v. Hackmann, 292 Mo. 27, this court said (l. c. 32):

"It follows that if the title of an act 'descends to particulars' and states such particulars as the subject of the act, then not the general subject within which such particulars fall but the particulars stated become the subject stated in the title. In such a case the provisions of the act enactable under such a title must be such as fairly relate to and have a natural connection with, not the general subject which might have been stated, but the subject which is stated, i. e. the particulars set out in the title."

See also State v. Crites, 277 Mo. 194; State ex rel. Greene County v. Gideon et al., 277 Mo. 356.

It will be noticed in the case last cited that the title to the act containing the objectionable matter merely stated that it was the repeal of a previous act and the enactment in lieu thereof of another act. The amendatory act went beyond the subject-matter contained in the original act which, as in this case, provides functions for a

1248

juvenile court which was not recognized as existing in any original act.

In State v. Sloan, 258 Mo. 305, this court had under consideration an act which had passed through several revisions under title containing the language "herding cattle by non-residents." And the body of the act contained a provision preventing the driving of cattle from one county to another for the purpose of grazing, making it apply to residents as well as nonresidents. It was held that it did not come within the purview of the title. The court said, l. c. 314:

"Where the title of an act descends into detail and attempts to point out a particular class of persons to which the law is intended to apply, it will not support a law leveled against a wholly different class of persons not mentioned in such title."

In point are Vice v. Kirksville, 280 Mo. 348, l. c. 356-7; State v. Rawlings, 232 Mo. 544, and State v. Great Western Coffee & Tea Co., 171 Mo. 634, 641.

In O'Brien v. Ash, 169 Mo. 283, l. c. 299, this court quoted from the previous case on the subject, as follows, relating to the provision of the Constitution under consideration:

" 'It is universally held by the appellate courts of this State that the object of this provision was to prevent the conjoining in the same bill incongruous matters, and subjects having no legitimate connection or relation to each other, and in no way germane to the subject expressed in the title, and to prevent surprise or fraud upon members of the Legislature rather than embarrass legislation by making laws unnecessarily restrictive.' "

In this case the title of the Act of 1917 deals with a general subject and specifically described all its incidents. In great detail it "descended to particulars" and having descended to particulars it could not embrace in detail a subject not mentioned. The general expression "reenacting substantially all *laws relating to said institutions and matters relating to same*" concerns only the institutions mentioned in the same title by name. The laws that had previously been enacted were enacted before there was a juvenile court. Other cases in point are Shively v. Lankford, 174 Mo. l. c. 544-45; State v. Persinger, 76 Mo. 346; Williams v. Railroad, 233 Mo. 666, l. c. 676, 677; Berry v. Majestic Milling Company, 284 Mo. 182, l. c. 190-194.

VII. The passage under consideration provides for all commitments of *boys* under the age of seventeen years to the penitentiary, or reformatory or penitentiary by the juvenile court, because as said in the Rutledge case (l. c. 1065) "the juvenile court has a broader latitude than a court of exclusive criminal jurisdiction in the imposition of punishment."

The reason is good, but girls are not mentioned. Why should they be denied "equal protection of the law" designed "for the reformation of the child?" [State ex rel. Matacia v. Buckner, 300 Mo. 1. c. 365.]

It is true that discriminations *in favor* of women are not in violation of the "equal protection" clause of the 14th Amendment to the Federal Constitution. They could be forbidden to sell liquor when such privilege was accorded to men. They could be prohibited from entering wine rooms. Their hours of labor could be limited, specific sanitary regulations in their employment, laws keeping them off the streets during certain hours and the like do not offend against the Constitution. But all such measures are designed for their protection. To deny them equal access with men to the courts when charged with crimes does deny them "equal protection of the laws."

"A statute relating to criminal procedure is void as a denial of the equal protection of the laws if it prescribes a different procedure in the case of persons in like situation." [12 C. J. 1186, 1187.]

That principle has been applied by this court to juvenile offenders. [State v. Gregori, 318 Mo. 998.]

The constitutional inhibition applies to women. They cannot be discriminated against. [12 C. J. 1141; Opinion of the Justices to the House of Representatives, 207 Mass. 601; Morgan v. State, 179 Ind. 300, 1. c. 303; State v. Holland, 37 Mont. 393, 1. c. 406.] A classification in order to avoid conflict with the equal-protection clause must be applied impartially to all subjects of each class, and must operate uniformly upon persons in like circumstances. It cannot be made arbitrarily without reasonable basis. [State ex rel. v. Railroad, 246 Mo. 1. c. 514, 515; Hawkins v. Smith, 242 Mo. 696; 12 C. J. 1147; People v. Mensching, 10 Am. Eng. Ann. Cases, 1. c. 103; 6 R. C. L. 378, 380, 405.]

Courts must be open to all in like circumstances on the same condition *"with like rules of evidence and modes of procedure."* [6 R. C. L. 428, sec. 426.] The footnote to that item cites many cases from many states and the U. S. Supreme Court. The equal-protection clause applies with special force and particularity to court procedure.

How can it be claimed that there is a reasonable basis for the tender care of boy delinquents by the court vested with reformatory discretion, while girls in like circumstances must submit to the rough and tumble of a criminal court? Or, why should a judge of a criminal court have discretion to try a girl as a criminal while her brother charged with the same offense may be coddled by the reformatory efforts of the judge presiding over the so-called juvenile court?

Thus the closing sentence of Section 12426 is unconstitutional because it denies equal protection of the laws. It was enacted in

violation of every safeguard designed to prevent "jokers" in legislative bills; it is an anomaly thrust into the statute without authority, out of harmony with the general purpose of the law.

It is clear, therefore, that the respondent judge of the Circuit Court of Howard County has jurisdiction to proceed with this case in the manner contemplated by his order, or jurisdiction to conduct the case against relator as a delinquent child, and whether he may conduct it one way or the other is to be determined by him.

The provisional rule is therefore discharged. *Atwood, Gantt* and *Frank, JJ.*, concur; *Ragland, C. J.*, absent; *Blair, J.*, concurs in result; *Henwood, J.*, not sitting.