STATE of Missouri, Respondent,

v.

Clotelle Jo Ann REID, Appellant.

No. 50984.

Supreme Court of Missouri,
Division No. 2.

June 14, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Robert V. Groce, Sp. Asst. Atty. Gen., Springfield, for respondent.

Louis Wagner, Kansas City, for appellant.

EAGER, Presiding Judge.

Defendant was charged by amended information with stealing merchandise of a value of more than $50 and with a prior felony conviction. After being found guilty by a jury, and after the court had found a prior felony conviction, she was sentenced to the Department of Corrections for a term of five years.

On the afternoon of March 20, 1963, Robert Holman, a buyer in the men's department of Patterson's Department Store in Sedalia, noticed two women looking through the men's suits; one was rather tall with red hair, the other short and rather heavy; both were negroes. The shorter one was positively identified at the trial as this defendant. Upon inquiry, these women stated that they were "just looking around." They then wanted to "see some shirts"; Holman made three trips to another room to bring and show them shirts. He testified: "I saw I was getting nowhere with shirts, so I just quit * * *." At times he was gone for three or four minutes, looking up sizes, etc. He later waited on another customer while the women were still in the suit department, and he was away for perhaps six or seven minutes. Soon after he came back and "stayed with them" they left that section, but stopped at the sport coat department; by that time Holman was waiting on other customers. He later saw them stop at the tie rack and still later, go out the door. These women made no purchases. About two or three minutes after they left Holman missed a sport coat which a man had been examining shortly before; he then missed some slacks. With the help of James Reed, an employee from a store nearby, he got the Kansas license number of a 1958 white Cadillac which was leaving

the alley at the side of the Patterson Store and then called the police. Holman positively identified a suit and six ties produced in evidence as articles missing from the store on that day; these specific articles he valued at $85, but he further testified that a sport coat and two pairs of slacks, also missing, were valued at $68.40. It would appear from the evidence that two more men's suits were also missing, but this is not really material. Holman also testified that the women were together in the store most of the time, and that they were there probably forty-five minutes.

Two other employees saw these women in the store together; one saw them "going through the suits" hanging in the men's department; both saw them leave the store together and turn left toward the alley. One of these witnesses noticed that the taller woman had *"bloomers"* hanging down below her coat and that they appeared to have something "stuffed in them." The other witness saw the two outside as they left the store and testified that when they reached the corner of the alley some clothing fell from under the coat of one of them,—"dark garments * * * like men's clothing." This latter witness went immediately into the store to report to Mr. Holman what she had seen. She testified that the clothing which she saw fell from the person of the "other woman that was with this lady,"— the one who was tall with red hair, later identified as Bertha Ramsey.

James Reed, a college student, who, at the time in question, was employed in a jewelry store nearby, had gone into Patterson's to pay a bill, and saw the two women looking at suits and sport coats; he thought he recognized them from some prior incident, spoke to Holman about them (all of which came in without objection) and went on upstairs and paid his bill. When he came back down he noticed the two leaving the store and followed them; he saw them walk to the alley and enter the alley, and he also saw a white Cadillac pull into the alley and stop, whereupon the two women got into it. He described these persons as negro

women, one tall with red hair, the other of medium height and heavy set. Reed then went back into the store, reported to Holman what he had seen, and helped him get the license number of the car as it left the alley.

The Warrensburg police stopped the car later on Highway 50, following receipt of a message from the Pettis County Sheriff; they took the three to the police station where they were merely held in the Chief's office until the Pettis County officers came for them. According to the arresting officer, defendant was driving the car when it was stopped; he testified that on the way to the station "both" of the women told him that since there were no charges against them in Warrensburg "how about us giving you some money and letting you forget about it?" He then specifically testified that the defendant offered to give him money. He thought that the amount mentioned was either $100 or $200. At the station the two women asked that he leave their companion in the car, as he had "bad sugar diabetes"; the women were taken into the station and as this officer came back outside he saw this man, Raymond Grant, coming from the trunk of the Cadillac with something wrapped in a bedspread; watching, he saw the man walk to a sort of alleyway beside a car lot and place the bundle behind an air conditioner. He then took the man into the police station and investigated the contents of the bundle, but left it there until the Pettis County officers arrived. It contained items heretofore referred to as coming from the Patterson store, including suits, a sports jacket, and ties. The Warrensburg officer specifically identified various articles as exhibits at the trial. The Pettis County officers traced the custody of the articles introduced in evidence from the spot on the ground in Warrensburg to the time of trial.

No witness testified that he or she saw defendant take anything from the store, or saw any of these articles on defendant's person or in her personal possession. Raymond Grant testified: that he was in Sedalia to see a cousin, that he met these two women

(whom he knew) and asked them for a ride to Kansas City; that he sat in the car alone for awhile, and later the Ramsey woman "begged" him to bring the car up the street, which he did; that the two women were then standing on a corner by the alley; that he drove into the alley, and they got in; that he drove off and kept going through alleys until he could do so no longer, whereupon he drove south to a blacktop road, west to Highway No. 127, and north to U. S. Highway 50 where one of the women took over the driving; that somewhere on Highway 50 they were stopped by the police; that outside the police station the Ramsey woman gave him the car keys and told him "to take some stuff out of the back of the trunk, which I did do," and put it over "in a lot"; that he did not see who put the bundle in the car. He identified the bedspread in which the clothing was found. He was allowed to testify, without objection, that he had pleaded guilty to stealing over $50 and had received a sentence of two years. He had apparently seen both of the women at the back of the car in the alley at Sedalia. It is difficult to construct a very coherent story from this witness' testimony. Some of the clothing had been returned to Patterson's store before the trial. Certain other features of the evidence will be mentioned in the body of this opinion.

We have some doubt of the validity of any assignment in the motion for new trial as to the sufficiency of the evidence for conviction, but have determined to consider this. The actual contention now made is that no concert of action was shown between this defendant and the other two persons or either of them, nor was it shown that defendant took anything from the store, or had any of the goods in her possession or under her control; that her mere presence is all that was shown. Counsel cites no authority on this point except constitutional provisions on due process, loosely interjected. The sufficiency or insufficiency of evidence for conviction is a totally different thing from a lack of due process arising from an unfair trial. Our sole question is

whether this evidence was sufficient to permit a finding that defendant was acting in concert with one or both of the others with a common intent, and was aiding and abetting in the commission of a crime (Section 556.170 RSMo 1959, V.A.M.S.), subject, of course, to the requirements of the instruction given on circumstantial evidence. The evidence here abundantly proves that the crime of stealing merchandise worth more than $50 was committed by one, two, or all of the three persons.

■ Stolen articles of clothing were seen to drop from the person of Bertha Ramsey, and she gave Grant the car keys and told him to take the "stuff" out of the trunk; that woman was also wearing "bloomers" which appeared to be stuffed with something (shades of State v. Green, Mo., 292 S.W.2d 283). The two women were together at substantially all times within the store and they were both seen looking through the men's suits. They stopped together at the sport coats and at the tie rack; they left the store together after about forty-five minutes, and were together when the articles fell from Ramsey's person; both were wearing coats; they entered the alley together, stood at the trunk of the car together, and entered the car together. Neither made a purchase in the store. They rode together through the alleys and on a roundabout way to Highway 50 at a point east of Warrensburg. There was specific evidence that this defendant offered money to the police officer at Warrensburg as a bribe for letting them go; also that, when apprehended, *she* was driving the car. Under these circumstances, we hold that the jury was entitled to find, if it so chose, that the defendant was acting in concert with Bertha Ramsey in committing the theft, and was aiding and abetting her. Whether defendant stole anything independently, we do not know, but that is not material.

In State v. Slade, Mo., 338 S.W.2d 802, 805–806, the court said: "The defendants' principal contention is that there is no evidence that any of them had any part in the

actual taking and driving away of the stolen automobile and that no conspiracy was shown within the provisions of § 556.-120 RSMo 1949, V.A.M.S. The defendants were charged with stealing an automobile and not with conspiracy which is a separate and independent offense. See 11 Am.Jur., Conspiracy, § 9, p. 549. A person who aids and abets the commission of a criminal offense is guilty as a principal without a showing of conspiracy. Section 556.170 RSMo 1949, V.A.M.S.; State v. Reich, 293 Mo. 415, 239 S.W. 835, 837[5]; State v. Porter, Mo., 199 S.W. 158, 160[2].

"Nor is it necessary to prove that the defendants personally participated in the actual taking and driving away of the stolen car. All persons who act together with a common intent and purpose in the commission of a crime are equally guilty even though they are not personally present at the commission of the offense. State v. Butler, Mo., 310 S.W.2d 952, 957[7]; State v. Lackmann, Mo., 12 S.W.2d 424, 425[4, 5]; State v. Hayes, Mo., 262 S.W. 1034, 1037 [8, 9]."

■ And in State v. Butler, Mo., 310 S.W.2d 952, at loc. cit. 957, the court said: "It is well settled that a party may be charged with the commission of the felony and be held under such charge for being present and participating in concert with the others in the commission of the crime, or for being present and aiding and assisting another in doing it. It is not necessary that he, personally, have done all of the things which together make up the elements of the crime. State v. Sheard, Mo.Sup., 276 S.W.2d 196, certiorari denied 352 U.S. 849, 77 S.Ct. 68, 1 L.Ed.2d 60; State v. Whitaker, Mo.Sup., 275 S.W.2d 316; State v. Chernick, Mo.Sup., 278 S.W. 2d 741." Defendant's counsel was entitled to argue to the jury, as undoubtedly he did, that defendant was merely present and that she was innocent, but the factual issue of her guilt under this evidence was for the jury. There is no doubt that a defendant's

guilt may be proven by circumstantial evidence if it meets the requirements of the law. State v. Worley, Mo., 353 S.W.2d 589. And, on appeal, all evidence tending to support the verdict is considered as true, and all inferences favorable to the verdict are indulged. State v. Burton, Mo., 357 S.W.2d 927.

■ An argument is rather casually and improperly intermingled in this point complaining of a remark of the trial court. The witness Holman was testifying at the time and he stated that "they wanted" to see some shirts; counsel objected on the ground that only the defendant was on trial and that the evidence should be limited to what she said and did. At this point the court said: "Mr. Gardner, if the evidence showed they were acting in concert, each one is the act of the other." Counsel replied in effect that "they" did not then know what the evidence would show. This was, in effect, a ruling of the court that the evidence might proceed, subject to the establishing of a concert of action between the two women. Counsel seems to concede in his brief that if the court had used the word "shows" instead of "showed" the remark "may have been proper." This is a hypertechnical distinction. The State was entitled to proceed with its evidence in order to establish a concert of action, and the remark was not improper. During the progress of a trial such matters are largely within the discretion of the trial court. State v. Price, 361 Mo. 1034, 238 S.W.2d 397; State v. Fields, 234 Mo. 615, 138 S.W. 518; State v. Craft, 299 Mo. 332, 253 S.W. 224. If, at the conclusion of the evidence, counsel felt that a concert of action had not been established he was at liberty to file a motion for a directed verdict (which he did) or to move to strike all testimony which he deemed not sufficiently connected up.

■ A point is made that the court erred in admitting "extrajudicial statements" without proof that they were voluntarily made. Considerable argument is made con-

cerning the burden of proof on "voluntariness." Counsel quotes a remark of the court, stated to have been made "in the presence of the jury," as improperly placing such burden of proof, when in fact the record specifically shows that the remark was made during a recess and *outside* the presence of the jury. Such misleading statements are not to be commended. Here, there was no confession and nothing which could even be considered as a direct admission against interest. Counsel do not refer to any, and we hardly understand why the point is included in the brief. We do find that after a hearing outside the presence of the jury the Chief Deputy Sheriff of Pettis County testified (without objection and in answer to a question asking what the defendant said) that while he was taking the three back to Sedalia, with all of them in the back seat, both women said to him that the "old man was sick and they didn't see why he would be put in this and put in jail, that he should be turned loose." Upon a substantial re-asking of the original question, counsel for defendant started to object and then said: "I will withdraw my objection." After two or three intervening answers and questions the substance of the answer about the "old man" was repeated. If such a remark be considered as an admission against interest, no objection whatever has been preserved and indeed objection was expressly waived. If this is what counsel is complaining of, we reach no question of burden of proof, voluntariness, or due process. Counsel does seem to complain of the admission of the testimony of Raymond Grant, but only in that it tended to implicate defendant by association, although specifically exonerating her. If so, some objection should have been made at the time. The one and only objection made to any part of Grant's testimony, a mere preliminary part, was sustained.

A point is made that there was no evidence to support the giving of Instructions 1, 3 and 5. The sole assignment on this subject in the motion for new trial was as follows: "8. The Court erred in giving State's instructions numbered one through five, and eight through ten." This is wholly insufficient to preserve anything for review. We have so ruled in many cases and it is unnecessary to restate the reasons here. See Criminal Rule 27.20, V.A.M.R.; State v. Whitaker, Mo., 312 S.W.2d 34; State v. Reece, Mo., 324 S.W.2d 656.

The last point is that the court erred in trying defendant under the "Habitual Criminal Act" because her prior conviction was illegal and void. The prior conviction was one for arson, in the Circuit Court of Cole County, Missouri, on July 1, 1955. No objections whatever were made at the trial to the introduction of the record of the conviction, the transcript of confinement, the record of the Bureau of Identification (photograph, personal data and fingerprints), or to the oral testimony identifying defendant as the person so previously convicted and imprisoned. Counsel now states that the prior conviction was *void* because defendant was then under seventeen years of age and a ward of the Juvenile Court of Jackson County. The statements in the brief do not prove themselves. The penitentiary records do show that on July 1, 1955, the defendant was then twenty-seven days less than seventeen years of age. There is nothing whatever in the transcript to show that she was or ever had been a ward of the Juvenile Court of Jackson County. If the prior judgment was not *void,* the complaint now made has been waived. State v. Barnes, Mo., 345 S.W.2d 130. Counsel seeks to attack the judgment collaterally. The prior proceedings were instituted by information filed in the Circuit Court of Cole County. Counsel cites Sections 211.031–.041 and .061 of RSMo V.A.M.S., but cites no cases. The statutes to which counsel thus refers are parts of the Juvenile Courts Act of 1957, Laws 1957, p. 642 et seq., which became effective in August, 1957. Those statutes do, generally speaking, give to the Juvenile Courts exclusive jurisdiction over minors under seven-

teen years of age who are charged with offenses against the state or a municipality; provided, however, that in the discretion of the Juvenile Court such a minor who has committed an offense classified as a felony may be "prosecuted under the general law." Section 211.071. The validity of the prosecution of such a minor under the general law in accordance with the prior statutes has been considered in State ex rel. Wells v. Walker, 326 Mo. 1233, 34 S.W.2d 124, and in State v. Flores, 332 Mo. 74, 55 S.W. 2d 953. In the latter case the court said in part, loc. cit. 955: "These statutes were construed in State ex rel. Wells v. Walker, 326 Mo. 1233, 34 S.W.2d 124. It was held that, in a prosecution against a juvenile commenced under the general law, the circuit court had a right to proceed under that law. It was pointed out that, since no petition was filed alleging the defendant to be a delinquent child, it was not necessary for the court to exercise the discretion provided under that section. That ruling was approved by this court in Ex parte Bass, 328 Mo. 195, 40 S.W.2d 457.

"In this case the defendant was charged by information filed in the circuit court of Pettis county by the prosecuting attorney and the cause proceeded to trial on that information. No petition nor request of any kind on the part of the defendant was made to have the cause transferred to the juvenile court. The court had jurisdiction to proceed as it did with the trial." In our case the prior prosecution was instituted in the circuit court under the general law, the circuit judge had both general and juvenile jurisdiction, there was and is no showing of an attempt or request to transfer the matter to the juvenile court, and prima facie, the court had full jurisdiction to proceed as in an ordinary criminal proceeding. We find no modification of the statutes which would have made these decisions inapplicable in 1955. We thus determine that the conviction of July 1, 1955, is not subject to the present collateral attack and that defendant was properly tried and sentenced as a second offender.

We find no error in those parts of the record which we are required to examine under Rule 28.02. The judgment is affirmed.

All of the Judges concur.