THE STATE v. JAMES D. FLORES, Appellant.—55 S. W. (2d) 953.

Division Two, December 31, 1932.

*W. W. Blain* for appellant.

*Stratton Shartel,* Attorney-General, and *James A. Finch, Jr.,* Assistant Attorney-General, for respondent.

WHITE, P. J.—Information was filed in the Circuit Court of Pettis County charging the defendant with attempt to rob. On the trial, January 18, 1932, he was found guilty as charged and his punishment assessed at two years' imprisonment in the penitentiary. From the judgment following he appealed.

The evidence shows that about ten o'clock P. M., December 24, 1931, the defendant, a boy sixteen years of age, went to the delicatessen shop of one Mr. Middleton. Virgil Hogan, a clerk, was present. The defendant was seated in a small eating room partitioned off from the main room. He asked that the light be turned out; said it hurt his eyes, so that he had only the light from the adjoining room. In a few minutes Virgil Hogan went back to see if defendant had finished his meal. Defendant presented two automatic 44 pistols, ordered Hogan to put up his hands, and forced him back into the kitchen where Middleton was seated. He ordered Middleton to put up his hands and asked where the money was kept. He was told it was in the cash register in front. He then struck each of the two men on the back of the head with the pistols. Middleton was staggered by the blow. Hogan ran out of the back door. Defendant followed him and escaped.

The defense was insanity. The parents of Flores testified that on the evening of the robbery he came home and exclaimed: "My brain, my brain, I am crazy!" that his appearance was the same as on previous occasions when he had spells.

Three doctors introduced by defendant testified that the boy was afflicted with epilepsy and in answer to hypothetical questions stated that under the circumstances attending the alleged crime he was insane. They also testified that while epileptics have slightly abnormal minds they have no particular tendency to commit crime.

In rebuttal Middleton and Hogan swore that the defendant was perfectly normal when he entered the delicatessen shop; that he sat down and talked about the football season. A police officer and the sheriff who took him in charge soon after the crime testified that they observed nothing unusual or abnormal in his facial expression, nor in his actions. The State also produced as witnesses the defendant's teachers who said that his work at school the year preceding the attempted crime was that of an average student. Classmates in the orchestra testified that Flores had no spell that they knew of.

The State also introduced a letter written by the defendant while he was in prison to a friend, William Jolley, in which he urged his friend, whom he addressed as Billy, to be careful; that the writer

had been "thru hell," and that "they" gave him the third degree. He urged his friend not to lose his head nor say anything. Then after some complaints about the condition of his cell, bugs, and rats, and the like, he wrote:

"I am going to get out on an 'temporary insanity plea' so I don't have to worry but while I am here it is about to drive me mad really. I told my story as if I were really crazy at the moment and that is the only thing that saved me from being sent up for two to ten years in the pen—not to the reformatory like most boys. I tell you we just had illusions about this 'easy money stuff.' We are going to stop. You had better think it over and put your original idea out of your head. I am not preaching . . . but I *know*, I have been through the mill and you don't realize how terrible it is."

Police Officer Glenn who had possession of this letter testified that the defendant also told him about the commission of other crimes, prior to the one with which he was charged.

▆ I. The appellant in his motion for new trial assigned several errors not argued in his brief. He first claims that the court had no jurisdiction of the cause and it should have been transferred to the juvenile court, because he was under the age of seventeen years, citing Section 14162, Revised Statutes 1919, which section provides that circuit courts in counties of less than fifty thousand shall have original jurisdiction of cases coming within the terms of the juvenile court act.

That section further provides that a petition alleging a child to be delinquent shall be dismissed and such child shall be prosecuted under the general law when in the judgment of such court such child is not a proper subject to be dealt with under reformatory provisions of this article.

Section 14163 provides that in the discretion of the judge any petition alleging a child to be delinquent may be dismissed and such child prosecuted under the general law.

These statutes were construed in State ex rel. Wells v. Walker, 326 Mo. 1233, 34 S. W. (2d) 124. It was held that in a prosecution against a juvenile commenced under the general law, the circuit court had a right to proceed under that law. It was pointed out that since no petition was filed alleging the defendant to be a delinquent child, it was not necessary for the court to exercise the discretion provided under that section. That ruling was approved by this court in Ex parte Bass, 328 Mo. 195, 40 S. W. (2d) 457.

In this case the defendant was charged by information filed in the Circuit Court of Pettis County by the prosecuting attorney and the cause proceeded to trial on that information. No petition nor

request of any kind on the part of the defendant was made to have the cause transferred to the juvenile court. The court had jurisdiction to proceed as it did with the trial.

■ II. Appellant assigns error in that the court permitted the State to amend the information by adding the words, "at the county of Pettis and State of Missouri on the 24th day of December, 1931," and by striking out the words "revolvers" and writing in lieu thereof the words "automatic pistols." The record shows that these amendments to the information were made before the jury was empaneled or sworn to try the cause.

Section 3508, Revised Statutes 1929, provides among other things that any affidavit or information may be amended in matter or form or substance at any time before the trial by leave of the court.

The amendments were entirely within the authorization of that section.

III. Error is assigned to the admission of defendant's statements to Cecil Glenn, police officer, about the commission of other crimes. He told the officer that with two other boys on the 9th of December, 1931, he went to the Armory in Mr. Flores' car, broke into the building and took some guns from the Armory. He described how they were careful to keep a lookout and conceal their operations. He also told the officer of other crimes committed by him in company with other boys. The court admitted the evidence on the ground that the State was not limited on the question of insanity to what took place on the night of December 24th when the alleged crime was committed; that the State had the right to show the mental condition a reasonable time before that and a reasonable time after that time. The court gave a special instruction to the jury that statements defendant made to Glenn were not to be considered by the jury as any evidence of the guilt or innocence of the charge for which defendant now stands trial, but should be considered for the sole and only purpose of passing upon the question of the sanity or insanity of defendant at the time the statements were made.

■ The general rule is that evidence of other crimes, independent of that for which the defendant is on trial, is inadmissible. [16 C. J. 586-587.]

The general rule does not apply where the evidence of another crime tends directly to prove guilt of the crime charged. Evidence which is relevant is not rendered inadmissible because it tends to prove him guilty of some other crime. The statements made by the defendant relating the circumstances of how he assisted in other crimes, like other statements he might make as to his actions within

a 'very recent' time, where admissible for the purpose of showing the condition of his mind *when he made the statements.* It was inadmissible for the purpose of proving the acts stated. This point was not covered by the special instruction given which was therefore inadequate.

IV. The prosecuting attorney, Mr. Salveter, in his argument to the jury spoke as follows:

"Now I want to ask you a question: Do you believe that James D. Flores was insane when he participated in the burglary and larceny of the United States revolvers from the Armory; do you believe that James D. Flores was insane when he took the automoblie? . . ."

There was objection and the court called attention to a previous ruling.

The prosecutor continued:

"Now listen, at the Armory, the testimony from the witness stand, he drove the car around the block to look and see if any officer was there, is that the act of a sane or insane man, to be on the outlook for being caught by the officials and officers of the law? Gentlemen of the jury when he went to Smithton, as he told the officers, and drove the car down there, then came back to Sedalia and—"

He was interrupted by another objection and the court then indicated that the matter concerned only the question of sanity or insanity. The prosecutor went on:

"Then he took part of the money. Is that the act of a sane or insane man? Why he told the officers when they were in Marshall they drove up to a filling station and that it didn't look good; a crazy man doesn't know whether a job looks good or not, if he is out to commit a robbery; then they drove around and found another station, then they got the money and he took part, and gentlemen of the jury, what did he tell the officer next; he told the officer instead of—a crazy man would have driven home over 65; a crazy man of unsound mind would not have known enough to take a detour in his course and go to Higginsville—"

At this point there was another objection and the judge said:

"Gentlemen of the jury I will say to you again as is already embodied to you in the written instructions that any evidence of any statements the defendant may have made relative to other crimes are not to be received by you as any evidence of whatever the guilt or the innocence of the defendant of this crime charged, but are to be considered by you solely on the question of sanity or insanity."

The prosecutor continued:

"That is the only purpose for which I make it, as the Court told you. I say to you, would an insane man know enough to take a detour through Higginsville and Warrensburg and when he gets back to his home city, to go up by 16th street and out in the south-west part of Sedalia, instead of coming in the shortest route home. Gentlemen, I *submit to you the defendant's own testimony about things he did in those three particular instances convince any rational man that he knew what he was doing beyond any question of doubt* and now, gentleman of the jury, why was it James D. Flores, if he is insane now, according to this testimony he was insane when he went to Smithton and Marshall and to the Armory, he was insane when driving around that Armory looking for the officers—"

Clearly the prosecutor went outside of his duty in that argument. He was not referring to the statement made by the defendant to the officer, to its quality, as showing the condition of defendant's mind. The prosecutor referred directly to the *acts* which were mentioned in that statement.

"Then he took part of the money. Is that the act of a sane or an insane man?"

Any finally:

"I *submit to you the defendant's own testimony about things he did, and those three particular incidents convince any rational* man that he knew what he was doing!"

The defendant did not testify at all, but here was a declaration by the prosecutor that the defendant had testified to the commission of other crimes and that those crimes were for the consideration of the jury to determine whether or not he was insane.

We think the trial judge and prosecutor entirely misconceived the effect of the statements made by the defendant to the officer. If evidence of other crimes was admissible for any purpose, which it is not necessary to decide, *no such evidence was offered.* If the defendant's statement be regarded as an extrajudicial confession, it was not admissible to show such crimes in the absence of proof that such other crimes had been committed. No *corpus delicti* was proven. There must be competent, relevant evidence of other crimes before it can be said that they are proven. [16 C. J. p. 592; State v. Hyde, 234 Mo. 200, l. c. 251, 136 S. W. 316.] The statement made by the defendant to the officer was for one purpose only: merely to prove the condition of mind of the defendant in making the statement. The trial court assumed that there was proof of other crimes, and that such proof was admissible for the purpose only of showing that he was sane or insane. The jury should have been instructed that *any statement* of defendant was *not proof* of the commission of other crimes and that it should be considered only

for the purpose of determining whether it was the statement of a rational mind. The argument of the State's attorney pointing out to the jury the details of what the defendant said he *did* in the accomplishment of the other crimes and receiving part of the proceeds of such crimes, was highly prejudicial. The prejudice was aggravated by the prosecutor referring to the defendant's *testimony* of such crimes when defendant did not in fact testify. All this with no correction by the trial court.

Other errors are claimed regarding incidents which probably will not occur at another trial.

The judgment is reversed and the cause remanded. All concur.