**STATE of Missouri, Respondent.**

v.

**Azzie Bee COOK, Appellant.**

No. 44682.

Supreme Court of Missouri.

Division No. 2.

Oct. 10, 1955.

—————

lock, Donald S. Siegel, St. Louis, lant.

M. Dalton, Atty. Gen., John S. Philst. Atty. Gen., for respondent.

R, Presiding Judge.

efendant was charged with assault ent to kill with malice aforethought; convictions of assault with intent to d of exhibiting a deadly weapon were arged in order to invoke Section 556.RSMo 1949, V.A.M.S., the so-called tual Criminal Act. Defendant was icted of the principal charge and punment assessed at twenty-seven years in penitentiary, but was found "not guilty" any prior conviction. The case has been re on a previous appeal, reported at 262 S.W.2d 866. That appeal involved solely an instruction upon a presumption of intent and malice, and a similar instruction is again involved. Under our views, as now expressed, it will not be necessary to outline the evidence in detail.

Defendant and his wife were apparently estranged, but he occasionally visited at the rooming house she operated at 5886 Page in St. Louis, and claimed to have a substantial investment in the place. Olive Squires, the victim of the assault now charged, was rooming there. On the day in question, December 13, 1951, at about 5:15 P.M., defendant appeared at the front door with a 20-gauge double-barreled shotgun, and

knocked; his wife opened the door, made some outcry and started to retreat; de- fendant fired a shot, perhaps at her and perhaps to scare her, but apparently it hit the jamb of the door through which she was leaving. Olive Squires, who had been sitting at the telephone in the same room, got up somewhat hurriedly and "went to leave" through a door; she testified that defendant shouted something which she did not understand and promptly fired a shot at her which hit her in the left hip. All this occurred within a minute or two after de- fendant appeared. She proceeded to the house next door. The evidence does not show what became of Mrs. Cook, nor did she testify at either trial; apparently she was not hit. The police soon came, found defendant and the gun, and arrested him, finding also two spent shells on the floor and two live shells in the gun. Defendant testi- fied at the present trial that he was merely trying to scare his wife when he shot first, that he did not even see Olive Squires and that the gun went off accidentally the second time, but he heard someone "holler." Both defendant and Olive insisted they had never had any disputes or trouble. She was in the hospital for more than two months, but apparently recovered; the diagnosis on the hospital record was "Gunshot wound, left buttocks, with per- foration of rectum. * * * exploratory laparodomy." There was evidence of cer- tain oral admissions of defendant to the police, including a statement that he asked Olive Squires if she was going to call the police, and that he had pointed the gun at her and fired a shot at her as she ran, be- cause she had caused him "a lot of trouble," and she was going to call the police. Such other facts as may be material will be re- ferred to later.

The trial court gave the following in- struction (Number III): "The Court in- structs the jury that he who willfully, that is, intentionally, uses upon another at some vital part, a deadly weapon, such as a shot- gun loaded with gunpowder and leaden balls, must in the absence of qualifying facts be presumed to know that the effect is likely to be death, and knowing this must be presumed to intend death, which is the probable and ordinary consequence of such an act; and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly or from a bad heart."

Assignments of error have been directed at this instruction in both the motion for new trial and in appellant's brief. The verbiage of the instruction is somewhat different from the one dis- approved in our previous opinion in this case, but it comes within the condemnation declared by the majority of the court, as there expressed; it not only instructs upon a presumption of intent to cause death, but also upon a presumption of malice, as the instruction there did. And we note further that it is wholly in the abstract. A majority of the court held there that where the jury had before it a "full, eye-witness account of the facts and circumstances," there was no room for any such presumption or for any instruction upon such a presumption. We do not see any particular virtue in the use of the words "in the absence of qualifying facts" and, in any event, they are insufficient to justify the instruction under our last previous rulings. At the second trial there was eye-witness testimony not only from Olive Squires but also from the defendant. These were the only witnesses to the shooting except Mrs. Cook, whose where- abouts do not appear. Under these circum- stances we fail to see any legitimate reason for the use of the present instruction at the second trial. We hold that in giving it the court committed reversible error. For a full discussion of the subject and the last ruling of this court en banc, see the case of State v. Martin, Mo., 260 S.W.2d 536, which is a complete and final authority for holding the present instruction to be prej- udicially erroneous. The argument that the courts have approved similar instruc- tions in previous cases is wholly unavailing. The last clause of the present instruction, involving specifically a presumption of malice, goes further than the instruction disapproved in the Martin case. We do not, by any means, intend to say that the jury may not be instructed on its right to draw reasonable inferences from the evi- dence, which is an entirely different thing.

We do hold that in the presence of the actual facts, as testified to here by eye-witnesses, it was improper to instruct the jury concerning a presumption of intent and malice. This rule is actually no different from that in civil cases to the effect that, in the face of substantial evidence of the actual facts, a presumption of fact disappears and has no evidentiary value as such, although the facts from which the presumption arose remain in the case. State v. Martin, Mo., 260 S.W.2d 536, 541; Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W.2d 136, 140; State ex rel. Bowdon v. Allen, Banc, 337 Mo. 260, 85 S.W.2d 63; State ex rel. Waters v. Hostetter, Banc, 344 Mo. 443, 126 S.W.2d 1164.

 Appellant complains also of various statements made by counsel for the state in argument; it will not be necessary to consider all of these for some were not properly raised at the trial or in the motion for new trial. The statement of the assistant state's attorney during the argument that "he killed one man already" was highly prejudicial and was entirely outside the evidence. There was evidence that defendant had, on a previous occasion, been charged with manslaughter and had on that occasion entered a plea of guilty to a charge of exhibiting a dangerous and deadly weapon. There was no conviction of manslaughter or plea of guilty to manslaughter. The statement was wholly unwarranted. Defendant's counsel objected, asked that counsel be rebuked and moved for a mistrial. The trial court said, "Proceed." The failure of the court to take some appropriate action was error. On this no authority really need be cited, but see: State v. Flores, 332 Mo. 74, 55 S.W.2d 953; State v. Mayberry, 360 Mo. 35, 226 S.W.2d 725; State v. Wellman, 253 Mo. 302, 161 S.W. 795; State v. Tiedt, Banc, 357 Mo. 115, 206 S.W.2d 524.

Two prior convictions were alleged in the amended information and evidence thereof was produced; convictions of four other miscellaneous offenses were admitted by defendant on cross-examination. The argument of the state's attorney about *six* prior convictions was not confined strictly to the question of credibility or even to the question of additional punishment, but rather seems to have been directed at establishing the defendant's guilt. This point is argued here by counsel for defendant, but we do not think it was sufficiently preserved in the motion for new trial under the requirements of Rule 27.20, 42 V.A. M.S. We merely mention it in view of another trial.

Defendant also complains of statements of the assistant state's attorney that Olive Squires was "entitled to justice * * * she is entitled to something, too. She is the one that got shot. She didn't ask to get shot." This line of argument was objected to when first made and the objection has been preserved in the motion for new trial. The argument tended to distort the real issues and drag in a personal issue between Olive Squires and defendant. It is not necessary to decide here whether this alone would constitute reversible error. The argument should not occur again.

The last point made is that Instruction No. I (the principal instruction on assault with intent to kill with malice aforethought) was broader than the evidence, in that it referred to the giving to Olive Squires wounds "upon the head and body," whereas no evidence showed that she was wounded in the head. The argument is that the reference to wounds in the *head* was erroneously prejudicial as indicating more readily an intent to kill than would mere reference to wounds in nonvital parts. The argument is somewhat tenuous, but the instruction could well be confusing; while we cannot say that the wounds here were not in a "vital part," we suggest that at the next trial all instructions should follow strictly the evidence adduced.

For the errors herein found, the judgment is reversed and the cause remanded.

All concur.