Jimmy W. **HUFFMAN**, Petitioner,

v.

**STATE OF MISSOURI**, Respondent.

No. 20746–4.

United States District Court,
W. D. Missouri, W. D.

June 25, 1975.

---

R. Thomas Day, Asst. Federal Public Defender, Kansas City, Mo., for petitioner.

Richard S. Paden, Asst. Atty. Gen. of Missouri, Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ELMO B. HUNTER, District Judge.

Petitioner, a convicted state prisoner who is currently confined in the Fordland Honor Camp at Fordland, Missouri, has filed his petition for federal writ of habeas corpus challenging the validity of his state conviction and sentence. Leave to proceed in forma pauperis was granted in an earlier order of Court.

The petition, uncontroverted records, and official records of a previous post-conviction proceeding reveal the following course of events. On October 8, 1946 petitioner, at the age of sixteen years, was sentenced by the Circuit Court of Howell County, Missouri to a term of life imprisonment following petitioner's plea of guilty to a charge of murder in the first degree. Petitioner did not appeal the judgment of conviction or imposition of sentence. Twenty years later in September of 1966, petitioner filed a motion under Rule 27.26, V.A.M.R. in the Circuit Court of Shannon County, Missouri to set aside the judgment of conviction and to vacate sentence. This motion was denied following an evidentiary hearing in the trial court. That denial was affirmed on appeal to the Missouri Supreme Court. *Huffman v. State*, 451 S.W.2d 21 (1970). Petitioner thereafter sought federal habeas corpus relief in this Court. His petition was in that action was dismissed for failure to exhaust state post-conviction remedies. *Huffman v. Swenson*, No. 18,199–4 (W.D.Mo. June 4, 1970). On January 12, 1971, petitioner filed a successive motion in the Circuit Court of Howell County under Missouri Rule 27.26. That motion was denied without hearing on July 16, 1971. Petitioner's appeal to the Missouri Supreme Court from that denial was unsuccessful. *Huffman v. State*, 487 S.W. 2d 549 (Mo.1972). The instant petition was filed on December 26, 1972.

In the initial petition filed herein, petitioner raised numerous contentions in support of his argument that his state conviction in 1946 was constitutionally invalid. These contentions and allegations were identical to those raised in his second 27.26 motion, and were as follows:

(a) "Lack of jurisdiction of the person or subject matter in controversy."

(i) "Movant improperly extradited from state of Louisiana."

(ii) "Movant, then a juvenile, improperly proceeded against as an adult."

(b) "Involuntary plea of guilty."

(i) "Plea of guilty coerced by threats of death penalty; improper and inflammatory pretrial publicity; physical abuse practised (sic) by Louisiana authorities and threatened by Missouri authorities."

(ii) "Threatened use at trial of illegally obtained, physically coerced, confession."

(iii) "Improper, incompetent advice of counsel."

(c) "Ineffective assistance of trial counsel."

(i) "Lack of trial preparation."

(ii) "Failure to attempt to suppress coerced confession."

(iii) "Failure to seek change of venue in view of publicity and public temper."

(iv) "Failure to properly and effectively protect Movant's rights viz a viz treatment as a juvenile."

(v) "Failure to advise Movant of rights on appeal."

(d) "Denial of, and loss of, transcript of proceedings to and including sentencing in this cause."

(e) "Ineffective assistance of counsel during original Rule 27.26 proceedings and appeal."

(f) "Newly discovered evidence."

In support of those contentions, petitioner made the following factual allegations:

(a) "At the time of the offense, Movant was a fifteen (15) year old boy. He was not informed of his rights with regard to extradition; he was not represented by counsel and had been denied access to friends or family when coerced by threats of physical brutality to execute a waiver of extradition from Louisiana."

"At the time of the offense, Movant was a fifteen (15) year old boy. When brought to Missouri he was tried as an adult and sentenced as such. Trial counsel did not counsel with Movant with regard to treatment as a juvenile offender, nor did they properly attempt to have him treated as a juvenile by the Court."

(b) "Movant was threatened with death penalty if he stood trial by counsel, the prosecutor and sheriff's authorities. The newspapers in town at that time were full of articles designed to inflame the passions of the populace. Movant was subjected to scorn and hatred by everyone with whom he came in contact. A written confession was obtained by physical and psychological brutality and coercion by police authorities of the State of Louisiana. The same document was threatened to be used against movant by prosecuting authorities in Missouri."

"Counsel failed to advise Movant of the possibility of suppressing the confession; of obtaining a change of venue or of an appeal. At all times counsel treated Movant as if his guilt was a foregone conclusion and the only issue was punishment. Counsel also failed to advise Movant of 'lesser included offenses' and the various results thereby possible in the event of a trial and conviction."

(c) "Trial counsel failed to interview or call witnesses for the defense. No attempt was made to suppress the confession. No attempt to seek a change of venue was ever communicated to Movant. Little, if anything, was done and nothing communicated to Movant regarding trial as a juvenile offender. Nothing was ever told Movant of his rights on appeal or for collateral relief."

(d) "All transcripts of proceedings including plea of guilty and sentencing of Movant are lost or destroyed. At the hearing on the originally filed motions under Rule 27.26, all state's witnesses testified there was no confession though newly discovered evidence refutes their testimony. Movant made repeated requests for said transcripts beginning soon after his conviction, none of which were ever acknowledged or complied with."

(e) "Counsel at the original 27.26 proceeding failed to adequately present and preserve many points on Movant's motion for state and federal review—Particularly by his failure to brief said issues on appeal."

(f) "Movant has reason to believe that Mr. Patrick Freeman, Esq., Thayer, Missouri, has located newspaper articles at or near the time of Movant's conviction and a newspaper reporter to prove the publicity and public feeling at the time and to prove the existence of the coerced written confession."

At the evidentiary hearing held in this cause, on June 11, 1974, petitioner's counsel was granted leave to amend the petition in the instant cause so as to

present only the following contentions and allegations:

(a) Petitioner's plea of guilty was involuntary.

(1) Threatened use at trial of legally obtained, physically coerced confession;

(2) Plea of guilty coerced by threats of death penalty;

(3) Petitioner not advised of the possibility of a change of venue, and plea coerced by inflammatory pretrial publicity and public hostility;

(4) Petitioner not advised of the possibility of disqualification of the trial judge or the possibility of conviction of a lesser included offense.

(b) Petitioner's plea of guilty was not knowingly or intelligently made due to ineffective assistance of counsel.

(1) Counsel failed to investigate circumstances surrounding petitioner's confession to Louisiana authorities;

(2) Counsel failed to advise petitioner as to the possibility of a change of venue or disqualification of trial judge;

(3) Counsel failed to pursue a motion to have petitioner treated as a juvenile;

(4) Counsel failed to advise petitioner that a plea of guilty was a waiver of his right to appeal, and failed to advise petitioner of the possibility of conviction for lesser included offense and the penalties applicable thereto.

(c) Petitioner was denied due process of law by trial judge's refusal to treat petitioner as a juvenile.

(d) Petitioner was denied due process of law by the failure of the State to provide him with transcripts of the proceedings wherein he was determined to be tried as an adult, entered his plea of guilty, and sentenced.

At the hearing, petitioner's counsel advised that petitioner did not wish to pursue the contentions and allegations raised in his initial petition not stated in (a) through (d) immediately above.

It appears from the files and records of petitioner's prior state post-conviction proceedings that he has presented to the highest available state courts, in substantially the same form, the contentions he seeks to assert herein. Rather than hold petitioner to the technical requirements of exhaustion of state post-conviction remedies prior to a consideration of his claims on the merits, and in order to avoid further litigation of the claims petitioner asserts herein, the Court has treated the contentions herein as exhausted for the purpose of the requirements of 28 U.S.C. § 2254. See *Russell v. Missouri*, 511 F.2d 861 (1975).

At the hearing on the instant petition, petitioner was in the interest of justice permitted to adduce evidence in support of his contentions in addition to that which was offered in the state post-conviction proceedings. From the record of the state post-conviction proceedings, and the testimony and evidence received in this proceeding, the Court makes the following findings and conclusions.

Petitioner's challenge to the validity of his state conviction and sentence relates primarily to the constitutional validity of his plea of guilty entered on October 8, 1946. Petitioner's claim that he was denied his Sixth Amendment right to counsel due to the ineffective representation afforded by his attorneys is immaterial in his attempt to impeach his plea of guilty, except to the extent it bears on the issues of whether the plea was voluntary and intelligently made. *Kress v. United States*, 411 F.2d 16 (8th Cir. 1966). Furthermore, a plea of guilty, knowingly and intelligently made, waives all nonjurisdictional defects and defenses and equates with an admission of guilt. See

*McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

At the evidentiary hearing of this cause, it was determined that a transcript of petitioner's plea of guilty and sentencing proceeding was not available, it having been either lost or destroyed. Thus there is no written record from which the respondent can affirmatively show the voluntariness of petitioner's plea and the waiver of his constitutional rights. In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that the acceptance of a defendant's guilty plea, where the record does not show that such plea was entered voluntarily and understandingly, constitutes reversible error as a matter of law. However, the mandate of *Boykin* has not been retroactively applied by the Court of Appeals for the Eighth Circuit, and therefore does not apply herein. *Hegwood v. Swenson*, 344 F.Supp. 226 (W.D.Mo.1972); *Vaugn v. Swenson*, 446 F.2d 1009 (8th Cir. 1971); *Crosswhite v. Swenson*, 444 F.2d 648 (8th Cir. 1971); *Meller v. State of Missouri*, 431 F.2d 120 (8th Cir. 1970), *cert. denied* 400 U.S. 996, 91 S.Ct. 469, 27 L. Ed.2d 445 (1971). In the instant proceeding, the allegations of fact made by petitioner which support his contentions that his plea of guilty was not voluntarily made, do not relate directly to the proceedings held before the Circuit Court of Howell County on October 8, 1946, but rather to events which occurred prior to that proceeding. Thus the absence of the transcripts has not precluded the respondent from producing evidence on the factual issues relating to the voluntariness of petitioner's plea.

The Court has reviewed the record of the evidentiary hearing of petitioner's state post-conviction motions and the decisions on appeal therefrom. From that review, and from the evidence adduced by petitioner and respondent at the evidentiary hearing before this Court, the Court finds that petitioner's plea of guilty was neither involuntarily or unintelligently made due to the facts he alleges in the instant petition.

■■ Initially, the Court notes that petitioner's allegation that his guilty plea was involuntary due to the threat of receiving the death penalty upon conviction of first degree murder is unsupported by the record. A plea of guilty is not rendered involuntary merely because it resulted from the defendant's desire to avoid the possibility of the death sentence. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The credible evidence adduced before this Court and the evidence in the state post-conviction proceedings reveals that the possibility of the death penalty did not coerce the defendant to enter his plea of guilty to the charge of first degree murder on October 8, 1946. It is notable that the defendant did not enter his plea of guilty to a reduced charge wherein the death penalty was not a possibility, and there was not in the case a plea bargain or promise of a recommendation of a lesser sentence which might have the effect of inducing the plea of guilty. The record reflects that at the time petitioner entered his plea of guilty, the possibility of receiving the sentence of death was still a real possibility, and there was no promise to recommend the lesser penalty by the prosecutor. There is absolutely no credible evidence to support the finding that in some manner it was represented to petitioner that if he entered a guilty plea he would not receive the death penalty, or that he entered his plea to avoid the death penalty. In light of the evidence adduced, the Court finds that petitioner's plea of guilty was not coerced by the possibility of the imposition of the sentence of death, and his contention that his plea of guilty was involuntary on that basis is without merit.

■ Regarding petitioner's contention that his plea of guilty was rendered involuntary by the presence of an ille-

gally obtained confession which was physically coerced by authorities in Baton Rouge, Louisiana, this matter was fully litigated in petitioner's state post-conviction motions. Petitioner was allowed in the instant proceeding to offer additional evidence bearing on this question. The Court has reviewed the evidence adduced in the state proceedings in conjunction with the evidence adduced before this Court. From that review, the Court has concluded that the findings of fact reached by the state court on these issues are correct, and that petitioner's additional evidence does not alter those findings. The records in these proceedings disclose that petitioner himself testified in his first 27.26, V.A. M.R., hearing that he did not of his own knowledge know whether or not he had given a written confession to Louisiana authorities. The prosecuting attorney who represented the state on petitioner's criminal charges testified that at the time of the plea of guilty he knew of no such written confession or any confession to Louisiana authorities. Petitioner's counsel, Mr. Robert Hyder testified that his investigation of the criminal charges against petitioner disclosed no confession written or oral which had been given to authorities in Louisiana. The evidence further established that persons viewing petitioner immediately upon his being brought to Missouri noticed no marks on petitioner which would indicate he had been physically beaten. Petitioner's counsel, Mr. Hyder, testified that petitioner did not tell him of any confession he had given to authorities in Louisiana, and petitioner did not at any time inform Mr. Hyder that he had been physically or psychologically mistreated by the authorities in Louisiana.

■ It is difficult to believe petitioner's assertions that he involuntarily entered his plea of guilty because he thought a confession he had given in Louisiana to authorities would be used against him at trial when petitioner has stated under oath in the state post-con-

viction hearing that he does not know that he ever signed a written confession, and when petitioner's trial counsel and the prosecuting attorney at the time state that they had no knowledge of a confession written or oral taken by Louisiana authorities. The totality of the circumstances herein establish that petitioner's plea of guilty was not rendered involuntary by the presence of a confession, if any, which he believed might be used against him at trial. The presence of a confession, assuming the inadmissibility thereof, does not render a plea of guilty involuntary but becomes material only if the petitioner can prove serious derelictions on the part of counsel sufficient to show that his plea was not a knowing and intelligent act. See *McMann v. Richardson, supra*, 397 U.S. at 774, 90 S.Ct. 1441; *Cantrell v. United States*, 413 F.2d 629 (8th Cir.), *cert. denied*, 396 U.S. 947, 90 S.Ct. 391, 24 L. Ed.2d 251 (1969). Therefore, petitioner's contention that his plea of guilty was involuntary is deemed to be without merit.

■ Petitioner's primary contention in the instant petition is that his plea of guilty was not understandingly or intelligently made due to the ineffective assistance of his appointed counsel. From the evidence adduced, the Court finds that petitioner's counsel provided assistance to petitioner which was constitutionally adequate. Contrary to the assertions of petitioner, the Court finds that Mr. Hyder did in fact fully investigate the facts surrounding the crime charged against petitioner, including the circumstances surrounding petitioner's statements to authorities. Mr. Hyder was appointed as co-counsel to represent petitioner approximately two and one-half months prior to the date of petitioner's plea. Prior to the plea, Mr. Hyder interviewed witnesses, made numerous inquiries as to the presence of confessions or statements made by the petitioner, investigated the possibilities of coercion of confessions or statements, and in summary fully investigated all

aspects of petitioner's criminal charges. During his independent investigation, and on several occasions prior to petitioner's plea of guilty, Mr. Hyder discussed various aspects of the case with petitioner. During these discussions, petitioner was advised of the possibilities of a change of venue, the possible effects of adverse pretrial publicity, the possibility of a change of judge, and the possibilities of conviction on a lesser included offense, including the penalties applicable thereto. Mr. Hyder specifically advised petitioner that a plea of guilty would be a waiver of his right to trial and a waiver of his right to appeal. Mr. Hyder testified, and the Court finds his testimony credible, that prior to petitioner's plea of guilty, he had determined that the prosecuting authorities had evidence apart from any statement given by petitioner which would establish the guilt of petitioner for the crime charged. However, Mr. Hyder explained to petitioner that he was fully prepared to take petitioner's case to trial and that the decision of whether or not to enter a plea of guilty was the petitioner's decision.

The evidence adduced establishes that petitioner was fully advised prior to his plea of guilty of the possibilities of a change of venue, and the consequences which could result therefrom; of the possibilities of a change of trial judge; of the possibilities of conviction on a lesser included offense and the penalties applicable thereto; and of the fact that his plea of guilty would be a waiver of his right to trial and appeal. Thus, petitioner's contentions that his counsel was ineffective or incompetent in failing to consider and advise petitioner of these matters are without merit.

Petitioner's allegations that his counsel was ineffective in failing to investigate the circumstances surrounding petitioner's alleged confession to Louisiana authorities, and in failing to competently advise petitioner with regard to any confession are also without merit. The record in this case does not establish that petitioner did in fact make a confession of his crimes to authorities in Louisiana. And in any event, petitioner's counsel, Mr. Hyder, did fully investigate to determine if such a confession was available for use at petitioner's trial. His investigation disclosed that there was no such confession to be used at trial. That conclusion is supported by the testimony of the prosecuting attorney of Howell County at the time of petitioner's plea which was to the effect that he had no confession given to Louisiana authorities for use at petitioner's trial. It is worthy to note that Mr. Hyder did in the course of his investigation determine that petitioner had made several incriminating statements to authorities in Missouri subsequent to his return to Missouri for trial on the charge of murder. Petitioner makes no claim that any of these statements were involuntary, but rather in his Rule 27.26, V. A.M.R. hearing testified that he was well treated upon his return to Missouri.

Under the circumstances, petitioner has failed to establish that his plea of guilty was unintelligent due to the ineffective assistance of counsel. The testimony and evidence received and reviewed by the Court establishes that Mr. Hyder fully investigated all aspects of the charges against petitioner and provided him representation and advice which was reasonably competent. From the circumstances it cannot be said that petitioner's plea of guilty was unintelligent due to anything his counsel did or failed to do. See *McMann v. Richardson, supra.* The decisions made prior to petitioner's plea of guilty regarding whether or not to request a change of venue or to attempt to disqualify the trial judge were decisions of trial strategy which were made after discussion of the alternatives with petitioner. Petitioner's counsel's conduct in making these decisions or including petitioner in discussions of the possible alternatives in trial strategy was in no way constitutionally inadequate or ineffective. Clearly, counsel's investigation of peti-

tioner's criminal charges was well within the realm of reasonable competency. See *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974). The Court finds that petitioner's decision to plead guilty clearly rested on the good faith evaluations and advice of his attorney which was within the range of competency demanded of attorneys in criminal cases. As stated in *McMann v. Richardson, supra*, 397 U.S. at 770, 90 S.Ct. at 1448:

> "Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissable in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but upon whether that advice was within the range of competence demanded of attorneys in criminal cases."

In addition to the allegations of ineffective assistance of counsel previously mentioned, petitioner alleges that his plea of guilty was unintelligent in that his counsel was ineffective in failing to pursue a motion to have petitioner treated as a juvenile. Coupled with this allegation is petitioner's contention that he was denied due process of law by the trial court's refusal to treat him as a juvenile. The record of petitioner's criminal proceedings discloses that on September 12, 1946, petitioner's counsel did in fact file a motion to have petitioner transferred to the juvenile division of the Circuit Court. This motion was denied by the Court prior to petitioner's plea upon the finding of the Court that the defendant was not a proper person to be dealt with under the Juvenile Law of the State of Missouri. Petitioner's contention that his counsel was not reasonably competent or that his plea of guilty was unintelligent because this matter was not further pursued is clearly without merit.

Petitioner's contention that he was denied due process of law by the failure of the trial judge to sustain his motion to treat him as a juvenile or to transfer him to the Juvenile Division of the Circuit Court was not presented to the state courts in a factual context. In the decision on appeal from the denial of petitioner's second 27.26 Motion, the Missouri Supreme Court stated in regard to petitioner's being tried as an adult at the age of 16 as follows:

> "With respect to (2) Mo.R.S.A., Section 9700 (cf. Section 211.071, V.A.M. S.) provided that a child otherwise subject to treatment as a child or juvenile could be prosecuted under the general law when, in the discretion of the judge having jurisdiction over such children, such child was not a proper subject to be dealt with as a child or juvenile. On the record and proffered proof it may be said only that movant was tried as an adult following an exercise of discretion over the judge having jurisdiction over him. *State v. Falbo*, Mo., 333 S.W.2d 279, 285."

Petitioner presented no additional evidence in this Court in support of his contention that his trial as an adult was in violation of his rights under the due process clause. Rather, petitioner asserts that the record of his criminal proceedings does not disclose what, if any, factors the trial judge took into consideration in determining that the petitioner should be prosecuted as an adult, and he asserts that the record does not disclose that petitioner or his counsel had a meaningful opportunity to present the trial court with arguments or factual support for his Motion for Transfer to Juvenile Division. See *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). On the basis of the record in the state courts, as affirmed by the Missouri Supreme Court, there is no evidence in this cause which would tend to establish that the discretion exercised by the trial judge in refusing to transfer petitioner to the Juvenile Division was abused, or that such discretion was not exercised. Thus petitioner's present contention amounts to an assertion that the procedures under which it

was determined that he was to be prosecuted as an adult violated due process.

■■■ The initial question which presents itself in petitioner's contention that he was denied due process of law by the trial judge's failure to certify him to the Juvenile Division of the Court for treatment as a juvenile is whether petitioner's plea of guilty amounts to a waiver of the right to assert this defect. It is fundamental that a plea of guilty amounts to a waiver of all nonjurisdictional defects. However, if the constitutional defect complained of goes to the very power of the State to bring the defendant into court to answer the charges against him, a plea of guilty does not waive a defendant's right to raise the issue in a petition for federal habeas corpus. *Blackledge v. Perry,* 417 U.S. 21, 44 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

In the instant case, petitioner, by challenging the constitutionality of the procedure by which he was brought into the Circuit Court of Howell County, Missouri for trial as an adult on a charge of first degree murder, raises a question as to the jurisdiction of the Court before which he entered his plea of guilty. Petitioner's plea of guilty does not preclude him from challenging the jurisdiction of the Circuit Court over the criminal proceeding wherein petitioner was tried as an adult at the age of 16 years. *Blackledge v. Perry, supra.* See *Powell v. Hocker,* 453 F.2d 652 (9th Cir. 1971).

Under Missouri law presently in effect, the jurisdiction of an adult criminal court is predicated on the proper certification of the juvenile by the Juvenile Court or Juvenile Division of the Circuit Court. See *State ex rel. T. J. H. v. Bills,* 504 S.W.2d 76 (Mo. en Banc 1974), Sections 211.031, 211.061(2), 211.071, 211.081, 211.181 RSMo 1969, V.A.M.S. And, under present Missouri law, and federal constitutional standards, a juvenile is entitled to certain rights and immunities in a statutory proceeding whereby it is determined whether the rights and immunities conferred by statute upon juveniles shall be denied to a particular juvenile upon a waiver by the Juvenile Court to the adult court over an offense committed by a youth. As a condition to a valid waiver order, a juvenile is entitled to a hearing, including access by counsel to the social records or similar reports which are considered by the court and to a statement of the reasons for the Juvenile Court's decision. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966); *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1965).

■■■ In the instant petition, there is no question that petitioner was represented by counsel at the time the Circuit Court considered and denied his motion for transfer to the Juvenile Division of the Court, and the record establishes that prior to the certification an investigation and report was made and submitted to the court and petitioner's counsel was given access to that report. At the time petitioner's motion for transfer to the Juvenile Division of the Circuit Court was denied, the Court made the finding that he was not a proper person to be dealt with under the juvenile law. This finding is disclosed in the clerk's docket entries in petitioner's criminal proceedings. There is no transcript available to disclose further findings, reasons or considerations made by the circuit judge concerning the denial of petitioner's motion for transfer to the Juvenile Court, and the record does not disclose whether or not petitioner was afforded the opportunity for an informal hearing prior to the determination of the motion.

The pertinent facts relating to petitioner's conviction under the general criminal law are as follows. Petitioner was arrested in July 1946 on a warrant issued on a criminal complaint. At that time he was 15 years of age. Following his arrest, he was afforded a preliminary hearing and his case was thereafter transferred to the Circuit Court. At that time no decision had been made by the prosecuting authorities on the question of whether petitioner would be charged under the general criminal law

or the statutes applicable to juveniles. On August 31, 1946, a criminal information was filed in the Circuit Court charging petitioner with the crime of first degree murder. On September 12, 1946, petitioner's counsel filed in the circuit court petitioner's motion to transfer petitioner's case to the Juvenile Division of that court for processing under the law applicable to juveniles. Following the preparation of a report of petitioner's social history, on October 8, 1946, the circuit judge denied petitioner's motion to transfer to the Juvenile Division of the court and petitioner entered his plea of guilty to the charge of first degree murder.

Under the Missouri statutes relating to the prosecution of juveniles in effect in 1946, and prior to the enactment of Section 211.031 RSMo in August 1957, the Juvenile Court or the Juvenile Division of the Circuit Court did not have exclusive original jurisdiction in proceedings in which a child was alleged to have violated the criminal laws of the state. Rather, at that time, when a person under the age of 17 years was brought before the Circuit Court in a prosecution commenced under the general criminal law, the Circuit Court had original jurisdiction to proceed under that law. *State ex rel. Wells v. Walker*, 326 Mo. 1233, 34 S.W.2d 124 (en banc 1930); See Sections 9673 et seq. RSMo (1939), and Section 1141 RSMo (1919). Under the then existing statutory scheme, if a person under the age of 17 was brought before the circuit court on charges under the general criminal law, he could, in order to request that the case proceed under the provision of the juvenile law, file a motion or petition in the circuit court requesting transfer of his case to the Juvenile Court or Juvenile Division of the circuit court. State ex rel. *Wells v. Walker, supra.* The determination of whether or not the person requesting such a transfer was to be processed under the general criminal law or the statutes applicable to juveniles was, by statute, left to the discretion of the circuit judge. *State ex rel. Wells v.*

*Walker, supra; State v. Flores*, 332 Mo. 74, 55 S.W.2d 953, 955 (1931); *State v. Naylor*, 328 Mo. 335, 40 S.W.2d 1079 (1931); see *Ex Parte Bass*, 328 Mo. 195, 40 S.W.2d 457 (1931); *State v. Reid*, 391 S.W.2d 200 (Mo.1965).

Unlike the present Missouri statutes relating to the treatment of juveniles charged with a violation of the state's criminal laws, and unlike the statutory scheme which formed the basis of the decision in *Kent v. United States, supra,* a person under the age of 17 years in Missouri in 1946 charged with a violation of the criminal law was not placed under the "exclusive jurisdiction of the juvenile court." Compare §§ 9673–9732 RSMo (1939) to Chapter 211 RSMo (1969). Thus, in petitioner's case, there was no "waiver" of the exclusive jurisdiction of the juvenile court to a court of general criminal jurisdiction, and there was no statutory protection against criminal prosecution under the general law which was taken from petitioner at the time the circuit court exercised its discretion in refusing to transfer the petitioner to the Juvenile Division of the court. Compare *State ex rel. T. J. H. v. Bills*, 504 S.W.2d 76 (Mo.1974) and *State ex rel. D———V. v. Cook*, 495 S.W.2d 127 (Mo.App.1973) to *State v. Reid, supra.* Rather, petitioner came under the original jurisdiction of the circuit court at the time the criminal information against him was filed in that court, and the jurisdiction of the circuit court to prosecute petitioner under the general criminal law was not predicated upon a proper certification of petitioner by the juvenile court or the Juvenile Division of the circuit court.

In the context of the Missouri statutes in effect in 1946, several matters become apparent. First the disposition of petitioner's motion to transfer him to the Juvenile Division of the court did not arise to a jurisdictional level, as the jurisdiction of the circuit court to prosecute petitioner under the general criminal law was not, as it is presently under Missouri law, dependent on the

proper disposition of that motion. Thus, assuming *arguendo,* that petitioner was entitled to a hearing and a statement of the court's reasons and considerations at the time his motion to transfer to the Juvenile Division of the court was denied, the court's failure to do so did not divest the circuit court of jurisdiction to prosecute petitioner under the general criminal law. Petitioner's plea of guilty to the charge of first degree murder in the circuit court amounted to a waiver of his right to assert that the procedure by which the circuit judge disposed of his motion to transfer denied him due process of law. Cf. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In challenging the procedures wherein he was prosecuted as an adult, petitioner is limited in the instant proceeding to attacks upon the voluntary and intelligent nature of the guilty pleas through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases. See *McMann v. Richardson, supra; Brady v. United States, supra; Parker v. North Carolina, supra; Tollett v. Henderson, supra;* see also *Blackledge v. Perry, supra.* And, as previously indicated herein, the court finds that petitioner received effective and competent assistance of counsel with respect to all of the issues here asserted. *McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974).

▄▄ Regarding petitioner's claim that he was denied due process of law in the circuit court's refusal to transfer him to the Juvenile Division of the court, it is further worth note that the principles announced in *Kent v. United States, supra,* and reaffirmed *In re Gault, supra,* relating to the procedures for a hearing and statement of reasons upon the "waiver" of Juvenile Court jurisdiction are inapplicable to the proceedings which resulted in petitioner's prosecution under the general criminal law. In petitioner's case, there was no "waiver" of the exclusive jurisdiction of the Juvenile Court to a court of general criminal jurisdiction. And, assuming the principles announced in *Kent v. United States* were to be held applicable to a procedure such as . existed in Missouri in 1946, those decisions have not been held to apply retroactively. See *Akins v. Cardwell,* 500 F.2d 47 (9th Cir. 1974); *Harris v. Procunier,* 498 F.2d 576 (9th Cir. en banc 1974); see also *Mordecai v. United States,* 137 U.S.App. D.C. 198, 421 F.2d 1133 (1969), *cert. denied,* 397 U.S. 977, 90 S.Ct. 1098, 25 L. Ed.2d 272 (1970).

▄▄ Petitioner's final contention herein is that he was denied due process of law by the failure of the state to provide him for use in his state post-conviction proceedings transcripts of the proceedings which occurred on October 8, 1946, wherein he was determined to be prosecuted as an adult, entered his plea of guilty, and was sentenced. This contention was raised on petitioner's first Rule 27.26 Motion and was determined adversely to petitioner on appeal from the denial of that motion. *Huffman v. State,* 451 S.W.2d 21, 23–24 (Mo.1970). The evidence introduced in that original Rule 27.26 proceeding established that the reporters' notes and transcript of the proceedings which occurred in petitioner's criminal case on October 8, 1946 could not be located in the official court records of the Circuit Court of Howell County, Missouri or elsewhere. It was stipulated at that time that the transcript of those proceedings could not after a search of the court records be located, and that the reporter for the Circuit Court of Howell County did not have or know the whereabouts of the missing transcript. The evidence indicated that subsequent to the proceedings on October 8, 1946, the court reporter was ordered to "take the testimony of question of entering plea." In view of this evi-

dence, the Missouri Supreme Court concluded that the deficiency of the record does not necessarily require that petitioner's plea of guilty be set aside. *Huffman v. State, supra,* 451 S.W.2d at 24. This Court is in agreement with that conclusion. If the transcript is unavailable due to the death of the court reporter or the loss of the reporters' notes, or because parts of the proceedings have not been reported, the defects are not remediable by federal habeas corpus. See *Norvell v. Illinois,* 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963); *Meller v. State,* 431 F.2d 120 (8th Cir. 1970); *United States ex rel. Hunter v. Follette,* 307 F.Supp. 1023 (S.D.N.Y.1969) aff'd 420 F.2d 779 (2nd Cir. 1969), *cert denied,* 397 U.S. 1067, 90 S.Ct. 1506, 25 L.Ed.2d 689. There is no indication whatsoever in this proceeding that the 1946 transcript or reporters' notes were intentionally destroyed or otherwise denied to the petitioner.

The determinative question in the present case is whether under the totality of the circumstances the petitioner's plea was entered knowingly and voluntarily. *Brown v. Swenson,* 487 F.2d 1236 (8th Cir. 1973). Based on the record before this Court, it is concluded that the evidence reliably establishes that the petitioner's plea of guilty was voluntary and intelligently made with the competent advice of counsel, and resulted from the knowledge of the strength of the state's case against petitioner. The credible evidence establishes that petitioner knew the nature of the charges against him, was informed of the maximum punishment and knew of his right to trial by jury when he entered his plea of guilty to the charge of first degree murder.

[15] Federal habeas corpus relief is available to a state prisoner only upon a denial of a federal constitutional right. The evidence before this court, including the evidence presented on petitioner's State Rule 27.26, V.A.M.R. proceedings, discloses no such violation, and petition-

er's contentions in that regard are found to be without merit.

Accordingly, having determined that all of petitioner's contentions presently raised herein to be without merit, the petition for writ of habeas corpus is hereby denied.

It is so ordered.